STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION v. CAROLINA POWER AND LIGHT COMPANY

AND

STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION, v. CAROLINAS COMMITTEE FOR INDUSTRIAL POWER RATES AND AREA DEVELOPMENT, INC., AILEEN MILLS COMPANY, ALEO MANUFACTURING COMPANY, AMEROTRON CORPORATION, BLADENBORO COTTON MILLS, BURLINGTON INDUSTRIES, INC.; CAROLINA BAGGING COMPANY, A DIVISION OF TEXTRON, INC.; CLAYTON SPINNING COMPANY, COLLINS AND AIKMAN CORPORATION, FOREMOST YARN MILLS, FRED WHITAKER COMPANY, GREYSTONE GRANITE QUARRIES, HADLEY PEOPLES MANUFACTURING COMPANY, HARRIET COTTON MILLS, HENDERSON COTTON MILLS, HOLT-WILLIAMSON MANUFACTURING COMPANY, HORNWOOD WARP KNITTING COMPANY, J. P. STEVENS AND COMPANY, INC., JORDAN SPINNING COMPANY, LEDBETTER MANUFACTURING COMPANY, LIBERTY HOSIERY MILLS, INC., LITTLE COTTON MANUFACTURING COMPANY, McLEOD PLYWOOD BOX COMPANY, PECK MANUFACTURING COMPANY, PILOT MILLS COMPANY, RAMSEUR INTER-LOCK KNITTING COMPANY, ROCKY MOUNT MILLS, ROSEBORO SPINNING MILLS PLANT, ROXBORO COTTON MILLS, ROYAL COTTON MILLS COMPANY, RUSSELL HOSIERY MILLS, INC., SANFORD MILLING COMPANY, SILER CITY MANUFACTURING COMPANY, INC., SILER CITY MILLS, SPOFFORD MILLS, INC., STERLING COTTON MILLS, INC.; TOLAR, HART AND HOLT MILLS; TUNGSTEN MINING CORPORATION, AND WADE MANUFACTURING CORPORATION.

(Filed 12 June, 1959.)

1. **Electricity § 3: Utilities Commission § 2—**

The Utilities Commission, in the exercise of delegated police power, has authority to fix rates for public service companies including supervision of rates charged and service rendered by corporations furnishing electric light and power, with the exception of municipal corporations, and it has the duty, in the exercise of its *quasi judicial* functions to establish reasonable and just rates therefor. G. S. 62-30, G. S. 62-31, G. S. 62-122.

2. **Same—**

The duty of the Utilities Commission to protect the public in reason-

able service at just and reasonable rates also requires it to fix rates that are just and reasonable to power companies so that they will have sufficient earnings to enable them to give reasonable service, to expand and improve their facilities as necessary in the public interest, to meet their obligations, to pay their stockholders a reasonable rate, and to compete in the market for capital funds.

**3. Electricity § 3:     Utilities Commission § 3—**

In initially establishing the rate structure of a public utility, or in revising such rate structure or any substantial part thereof, the Utilities Commission must follow the procedure indicated by G.S. 62-124, in which event the proceeding is a "general rate case" requiring investigation and findings in regard to investment, probable income and operating costs, etc., in determining a rate which will give a just and reasonable return upon the investment.

**4. Same—**

The establishment of a rate structure for a power company in proceedings under G.S. 62-124 does not come within the doctrine of *stare decisis*, but such rates are subject to modification or change for change of conditions upon proper petition at any time.

**5. Same—**

Where the rate structure of a public utility has been established, petition for the amendment, modification or recision of a single rate, or a small part of the rate structure, constitutes a "complaint proceeding" under the provisions of G.S. 62-72 and G.S. 62-26.5, in which the procedure outlined in G.S. 62-124 is not applicable.

**6. Same—**

It is necessary for the Utilities Commission to determine whether a proceeding before it is a general rate case or a complaint proceeding in order that it may apply the proper procedure, and its finding on this point will not be disturbed in the absence of a clear showing that the rights of the parties have been prejudiced. A proceeding which involves only a fuel clause affecting only one class of consumers and only a few of the company's rate schedules is properly heard as a complaint proceeding.

**7. Same—**

Where the rate structure of a power company has been established such rates are deemed *prima facie* just and reasonable, and in a subsequent complaint proceeding before the Utilities Commission attacking as discriminatory, unjust and unreasonable, a fuel clause applicable only to one class of consumers and affecting only a few of the rates, the Commission properly holds that the burden is upon complainants to show that the fuel clause and the rates resulting from the application thereof are discriminatory, unjust or unreasonable.

**8. Same—**

In this complaint proceeding attacking an order of the Utilities Commission putting into effect a fuel clause applicable to only one class of customers and affecting only a few of the company's rate schedules, the

UTILITIES COMM. v. LIGHT CO. AND UTILITIES COMM. v. CAROLINAS COMMITTEE.

order of the Commission taken as a whole *is held* to find that the fuel clause was not discriminatory, unjust or unreasonable and to be in substantial compliance with G. S. 62-26.3.

**9. Same—**

While the words "unjust, unreasonable. insufficient, discriminatory and unlawful" may be overlapping and interdependent in their meaning. it will be assumed that the General Assembly intended by the insertion of all of them that each should have some distinct and proper meaning, and it is held that G.S. 62-72 authorizes the Commission to modify a rate in a complaint proceeding on the basis of whether the rate is sufficient or insufficient, as well as whether it is discriminatory, unjust or unreasonable.

**10. Same — Utilities Commission has authority to consider financial status of power company in determining sufficiency or insufficiency of rates.**

In a complaint proceeding attacking an order of the Utilities Commission putting into effect a fuel clause applicable to only one class of customers and affecting only a few of the company's rate schedules, the Utilities Commission, upon finding that the fuel clause is not discriminatory, unjust or unreasonable, may consider evidence and find facts in regard to the necessity for the insertion of the fuel clause and as to the sufficiency or insufficiency of the applicable rates thereunder, and has the power to either increase or decrease the base price of the fuel upon which the rates are computed in accordance with the exigencies of the financial condition of the power company in a hearing under the provisions of G.S. 62-72, without applying the procedure outlined in G.S. 62-124, and its order retaining the fuel clause, with modification of the base price of fuel, will not be disturbed when its findings are supported by competent, material and substantial evidence.

**11. Appeal and Error § 49—**

Assignments of error based on objections to the admission of evidence which could not materially affect the findings of fact need not be considered.

DENNY, J., took no part in the consideration or decision of this case.

APPEAL by complainants and the North Carolina Utilities Commission from *Sharp, S. J.,* November 24, 1958, Civil Term of WAKE.

Sometime prior to 26 March, 1948, the Carolina Power and Light Company, hereinafter referred to as "Power Company," made application to the North Carolina Utilities Commission, hereinafter called "Commission," for authorization to put into effect "Coal Adjustment Rider No. 4," sometimes referred to as "fuel Clause," to be applicable to and become a part of Rate Schedules G-1A, G-2A, G-1C, P-16, P-27, P-28, P-31A, P-37, P-39, P-40, and P-41, of said Power Company.

The designated rate schedules had theretofore been established by order of the Commission in determining rates to be paid for electric

power, in the territory served by the Power Company, by industrial users of electricity, including textile manufacturers, milling and mining companies, and other large industrial plants.

It was proposed to add Coal Adjustment Rider No. 4 to said rates and thereby increase the charges for electric power thereunder on a graduated scale in relation to the change in price of coal used by the Power Company.

Coal Adjustment Rider No. 4, or fuel clause, as proposed by the Power Company, was as follows:

*"BILLING:* The net monthly bill, computed under the schedule with which this Rider is applicable, shall be increased by .0065c per kilowatt-hour, for those kilowatt-hours used by customer during the current billing month in excess of 15,000 kilowatt-hours, for each whole 10c above $6.00 per short ton in the average cost of coal burned during the twelve months period ending with the second preceding month. Whenever the heating value per pound of coal as received is less than 13,500 BTU, the cost may be adjusted to the equivalent of 13,500 BTU per pound."

Under this fuel clause a business to which one of the designated rates applied would pay an additional charge for electricity provided it used more than 15,000 kilowatt-hours in a given month and provided the average cost of coal to the Power Company during the preceding year exceeded $6.00 per short ton. In order that the quality of coal should not affect the result, it was provided that a quantity of coal producing 13,500 British Thermal Units was to be considered one pound of coal. The particular business would pay, under the fuel clause in addition to the established rate, .0065c per kilowatt-hour for each whole 10c above $6.00 that the Power Company had paid on an average during the preceding year for a short ton of coal. Thus the lower the base price of coal fixed in the fuel clause the greater the revenue to the Power Company. A base price of $6.00 would produce more than one of $7.00.

In support of its application to put the fuel clause into effect, the Power Company alleged and offered evidence at the hearing tending to support the following propositions: (a) that the revenue collected from the textile industry and large power customers under the then existing rates was not compensatory, that is, it was less than the cost of generating and delivering the current to such users; (b) that the Power Company was in need of additional revenue to meet the rising cost of coal, labor, materials and supplies; and (c) the Power Company was in need of additional revenue to enable it to pay dividends and maintain an unimpaired credit condition in order that it might

obtain through loans and sales of stock sufficient money for expansion and improvement of its facilities to meet the great post-war demand for current and services.

The affected industrial users made appearances at the hearing and strongly resisted the imposition of the fuel clause on the following grounds (a) that it was discriminatory in that it did not apply uniformly to all consumers of electricity, but placed all the burden on textile and large power users; and (b) that it would be disastrous to the users involved for it would increase the cost of production in the highly competitive industries of the protestants.

The Commission made an order on 8 April, 1948, in which it found:

"1. That the petitioner needs an increase in revenue, but not in the amount requested.

"2. That some textile and large industrial users are getting current at a non-compensatory figure.

"3. That a coal clause should be permitted but the base price should be $7.00 per ton.

"4. . . . The contention that the proposed increase should be spread alike on all classes of service appears plausible, but from a sense of equity it is not compelling. Electric rates are not uniform and practical rate-making does not require that they be made uniform. The measure of a rate is determined by the various elements which enter into the service that is to be performed."

The order put Coal Adjustment Rider No. 4 into effect, but fixed the base rate of coal at $7.00. The cause was retained for one year for the Power Company to file four quarterly income statements, and the Commission retained the right within 30 days after the filing of any of said statements to increase or decrease the base rate of coal.

After a further hearing the Commission on 28 February, 1950, modified its former order by "fixing the base price of coal in its fuel adjustment rider at $6.00 per ton, with a cost adjustment to the equivalent of 13,500 BTU per pound, when the heating value per pound as received varies as much as 100 BTU per pound either above or below 13,500 BTU."

The protestants filed a petition for a re-hearing, but the Commission refused to rehear the matter. There was no effective appeal from the order putting the fuel clause in effect or from the order of modification.

In 1958 the complainants filed a petition and alleged: that elec-

tric power is necessary to the operation of their businesses and the cost thereof is a substantial portion of the cost of their products; that they are subject to rate schedules G-1C, G-2A, P-27 and P-28, and therefore are affected by the fuel clause; that the fuel clause is discriminatory and causes them to pay an inequitable portion of the costs, expenses and revenues of the Power Company; that it is discriminatory with respect to competition with like industries in Duke Power Company territory; that the fuel clause is unjust, unreasonable and unlawful and retards industrial development in the Power Company territory; that the Power Company no longer needs the revenue derived from the fuel clause and would have a fair return without it; and that it endangers the ability of complainants to continue operations.

Complainants prayed: (1) that the fuel clause be eliminated; and (2) that the Commission fix fair, just and reasonable rates.

The Power Company denied generally and in particular the allegations of complainants' complaint and asked that it be dismissed.

The complainants consist of thirty-eight textile, milling and mining companies, users of electric power, and the Carolinas Committee for Industrial Power Rates and Area Development, Inc., a non-user organized for the promotion and encouragement of industry and industrial development in the Carolinas. Many of the complainants were protestants in the hearings referred to above.

The cause came on to be heard before the Commission and the hearing was in progress for two weeks. Twenty witnesses were heard and voluminous documentary evidence, consisting of 55 exhibits, was offered and admitted in evidence. The record of the case on appeal consists of 722 pages. The exhibits are even greater in volume.

The order of the Commission gives a history of the former hearings as to the fuel clause, reviews generally the evidence of complainants and the Power Company, and states:

"We have not considered this case as a general rate case. We do not attempt to determine the fair value of the Company's investment. From the complaint filed and testimony offered, we view this matter from two aspects: 1. Is the fuel clause, designated Rider No. 4, as provided for in the orders of the Commission in 1948 and 1950, discriminatory so far as the Complainants are concerned? 2. Are the earnings of the Company such at this time as to reasonably permit the elimination of, or change in, the fuel clause, reducing the revenue to the Company?"

The order further states:

"During the hearing we ruled that the Complainants had not established the fuel clause provisions to be discriminatory. We so hold. . . . The statute specifically provides that a rate made by the Commission is deemed to be just and reasonable, and the statute further provides the Complainants have the burden of showing that the rate which it complains about is unjust, unreasonable, or discriminatory. This the Complainants did not do."

The order made the following findings of fact:

"1. The operating experience and financial condition of the Company are now such as to justify a reduction in the cost of the fuel adjustment clause to the customers of the Company subject to this clause.

"2. The earnings of the Company are not sufficient to justify an elimination of the fuel clause but are sufficient to justify a change in the fuel clause by changing the base rate price of coal from $6 to $7."

The order provided for a modification of the "fuel" clause so as to change the base price of coal from $6.00 to $7.00. The effective date of the modification is September 1, 1958.

The Complainants and the Power Company filed exceptions to the order and the findings therein adverse to them, respectively, and appealed to the Superior Court.

The Power Company was relieved from the order pending the appeal, but was required to keep records so that accurate refunds might be made in case of a decision on appeal adverse to it.

The appeal was heard in Superior Court. The following are the pertinent portions of the judgment entered by Judge Sharp:

"1. In the following language on page 11 of its order the Commission found specifically that the complainants failed to establish their allegations that the rate complained of is unjust, unreasonable, or discriminatory:

'The statute specifically provides that a rate made by the Commission is deemed to be just and reasonable, and the statute further provides the Complainants have the burden of showing that the rate which it complains about is unjust, unreasonable, or discriminatory. This the Complainants did not do.'

"That in holding that the complainants have failed to show that Rider No. 4 is unjust, unreasonable or discriminatory as applied to the complainants, the Commission necessarily held that the complainants failed to overcome the presumption that as between the complainants and others similarly situated on the one hand and all

other ratepayers on the other hand, the proper balance existed and the appropriate distribution of revenue requirements had been met.

"2. The foregoing finding and conclusion of the Commission is supported by the record.

"3. That notwithstanding the ruling of the Commission that the complainants had failed to show that Rider No. 4 was unjust, unreasonable or discriminatory, it proceeded to reduce the rate for the complainants by raising the base price of coal from $6 to $7 a ton.

"That the reasons assigned for this reduction were that the defendant company 'can forego a part of the revenue produced by the fuel clause without any serious detriment to its operations'; that 'it does not appear that the loss of this much revenue will seriously impair the ability of the Company to finance its future needs'; and that 'operating experience and financial condition of the Company are now such as to justify a reduction in the cost of the fuel adjustment clause.'

"That these conclusions are not a legal basis for a rate reduction under the statute.

"4. The pleadings, the evidence, statements of counsel for the respective parties, and the Commission's order herein all establish that this proceeding is not a general rate case; and establish that it is strictly a complaint proceeding which challenges the validity and effect of only one of the defendant's rates, that is, its Adjustment Rider No. 4. The Commission having found that the complainants had failed to carry the burden of showing that Adjustment Rider No. 4 is unjust, unreasonable, or discriminatory, which finding is supported by the record, consideration by the Commission of the defendant's financial condition became unnecessary and any findings by the Commission with respect thereto were without legal consequence.

"5. The facts found by the Commission and its conclusions based thereon do not warrant a reduction of the defendant's rates or charges under its Adjustment Rider No. 4 and do not support the Commission's order of July 31, 1958.

"IT IS THEREFORE ORDERED, ADJUDGED AND DECREED, on the defendant's appeal, that the order entered in this proceeding by the North Carolina Utilities Commission on July 31, 1958, ordering 'that Carolina Power and Light Company, as of its next billing date after August 1, 1958, change the base price of coal, as now provided in its fuel clause adjustment, known as Rider No. 4, from $6 to $7,' be, and the same hereby is reversed."

In said judgment the court overruled all of complainants' exceptions.

From the foregoing judgment the Commission and Complainants appealed and assigned error.

*Attorney General Seawell and Assistant Attorney General Burns for the North Carolina Utilities Commission.*

*Broughton & Broughton and Fletcher & Lake for Complainants, appellants.*

*Joyner & Howison, W. H. Weatherspoon, Charles F. Rouse and Shearon Harris for Carolina Power & Light Company, appellee.*

MOORE, J. In the exercise of the police powers of the State the General Assembly has conferred upon the Utilities Commission the duty and authority to fix rates for public-service companies that are reasonable and just. *Corporation Commission v. Manufacturing Co.*, 185 N.C. 17, 23, 116 S.E. 178. The powers of the Commission are supervisory and regulatory, and it possesses *quasi-judicial* functions. The Commission has general supervision over rates charged and service rendered by electric light and power companies. G.S. 62-30. And it is under duty to inquire into service rendered and rates charged by them and to fix and determine the reasonableness thereof. G.S. 62-31. It must establish reasonable and just rates and charges of and for "persons, companies and corporations, other than municipal corporations, engaged in furnishing electricity, electric lights, current, (and) power . . ." G.S. 62-122. (Parentheses ours.)

In fixing any maximum rate or charge, or tariff of rates or charges, the Commission shall take into consideration the value of the power company's property used in public service, the reasonable cost of construction thereof, the amount expended in permanent improvements thereon, and the present compared with the original cost. The Commission shall also consider the probable earning capacity of such property under the particular rates proposed and the sum required to meet the operating expenses of the power company, and all other facts that will enable it to determine what are reasonable and just rates and charges. G.S. 62-124.

In *Utilities Commission v. State* and *Utilities Commission v. Telegraph Co.*, 239 N. C. 333, 344, 80 S. E. 2d 133, *Barnhill, J.*, (later C. J.), speaking for the Court explained the application of G.S. 62-124 as follows:

"Necessarily, what is a 'just and reasonable' rate which will produce a fair return on the investment depends on (1) the value of the investment — usually referred to in rate-making cases as the Rate Base — which earns the return; (2) the gross income received by the

applicant from its authorized operations; (3) the amount to be deducted for operating expenses, which must include the amount of capital investment currently consumed in rendering the service; and (4) what rate constitutes a just and reasonable rate of return on the predetermined Rate Base. When these essential ultimate facts are established by findings of the Commission, the amount of additional gross revenue required to produce the desired net return becomes a mere matter of calculation. Due to changing economic conditions and other factors, the rate of return so fixed is not exact. Necessarily it is nothing more than an estimate. In finding these essential, ultimate facts, the Commission must consider all the factors particularized in the statute and 'all other facts that will enable it to determine what are reasonable and just rates, charges and tariffs.' G.S. 62-124. It must then arrive at its own independent conclusion, without reference to any specific formula, as to (1) what constitutes a fair value, for rate-making purposes, of applicant's investment used in rendering intrastate service — the Rate Base, and (2) what rate of return on the predetermined Rate Base will constitute a rate that is just and reasonable both to the applicant and to the public."

A power company is a monopoly and the State exercises its police powers through the Commission to protect the public in reasonable service at just and reasonable rates. At the same time it requires the Commission to fix rates that are just and reasonable to the power company and which will provide for it sufficient earnings to enable the power company to give reasonable service, to expand and improve its facilities to meet the needs of users in its territory, to meet its obligations, to pay its stockholders a reasonable return, and to compete in the market for capital funds.

In fixing the rate schedules and rate classifications, or in revising said rates and classifications, or a substantial part thereof, the procedure indicated by G.S. 62-124 must be observed. Where the whole or a substantial portion of the rate structure of a public utility is being initially established or is under review, and where the required procedure under G.S. 62-124 is being carried out, the hearing before the Commission to establish or revise the rates is referred to as a "general rate case." Obviously such hearing is expensive and time-consuming for all concerned. Besides, the final order of the Commission therein is not within the doctrine of *stare decisis*. 73 C.J.S., Public Utilities, sec. 57 c, p. 1134. Circumstances change and emergencies arise. Petitions for amendment, modification or revocation of rate orders may be filed at any time.

Where a public utility has many rate schedules applying to many

different classes of service customers and only one rate or a few rates are involved in a petition for amendment, modification or rescission, ordinarily it is not required that the utility's property be valued and that the provisions of G.S. 62-124 be observed in such case. "A valuation of the property of the utility is not necessary in every proceeding before the Commission to fix rates or determine their reasonableness; so a specific rate may, in a proper case, be fixed without such valuation." 73 C.J.S., Public Utilities, sec. 41 bb, p. 1094. *Edison Co. v. Utilities Commission* (Ohio 1954), 118 N.E. 2d 531; *Town of Granada v. City of Lamar*, 5 PUR (N.S.) 519, 525, (1935).

G.S. 62-72 provides as follows: "Whenever the Commission, after a hearing had after reasonable notice upon its own motion or upon complaint, finds that the existing rates in effect and collected by any public utility for any service, product, or commodity, are unjust, unreasonable, insufficient or discriminatory, or in anywise in violation of any provision of law, the Commission shall determine the just, reasonable and sufficient rates to be thereafter observed and in force, and shall fix the same by order as hereinafter provided." And it is further provided in G.S. 62-26.5 that, "The Commission may at any time upon notice to the public utility affected, and after opportunity to be heard as provided in the case of complaints, rescind, alter or amend any order or decision made by it."

A hearing pursuant to the foregoing provisions of G.S. 62-72 and G.S. 62-26.5 which involves a single rate or a small part of the rate structure of a public utility is called a "complaint proceeding." It differs from a general rate case in that it deals with an emergency or change of circumstances which does not affect the entire rate structure of the utility and may be resolved without involving the procedure outlined in G.S. 62-124, and does not justify the expense and loss of time involved in such procedure. In many instances the complainants are unable to bear such expense, in others the Utility might suffer irreparable loss by the delay involved.

The instant case is a complaint proceeding. It involves only "Coal Adjustment Rider No. 4," applies to one class of electric power users, and affects only a few of the Power Company's rate schedules. The Commission in its order says: "We have not considered this case as a general rate case. We do not attempt to determine the fair value of the Company's investment."

It is within the province of the Commission to determine whether a hearing is a general rate case or a complaint proceeding. Indeed it is necessary as a matter of procedure that such determination be made in every hearing involving the establishment, modification or

revocation of rates. The findings of the Commission on this point will not be disturbed in any case in the absence of a clear showing that the rights of the parties have been prejudiced. In the case at bar we hold that the Commission was correct in declaring this a complaint proceeding.

The complainants alleged in express terms that the fuel clause was discriminatory, unjust and unreasonable. The burden was upon the complainants to establish the truth of these allegations. The prior establishment of the fuel clause as a part of the rate schedules applicable to complainants constituted *prima facie* evidence of its validity and that it was just and reasonable. *State v. Municipal Corporations,* 243 N.C. 193, 208, 90 S.E. 2d 519. The Commission found that complainants had not shown that the fuel clause and the rates resulting from the application thereof were discriminatory, unjust or unreasonable. This finding was supported by competent, material and substantial evidence. However, the Commission changed the base price of coal from $6.00 to $7.00, which had the effect of reducing the applicable rates. This modification was based on findings that will be discussed below.

The Power Company appealed from the order of the Commission changing the base price of coal and complainants appealed from the order on the ground that it did not rescind the fuel clause in its entirety. The Superior Court reversed the Commission and in effect adjudged that the fuel clause shall remain unchanged with the base price of coal at $6.00. The judgment of the Superior Court declared in effect that the finding by the Commission that the fuel clause was not discriminatory, unjust or unreasonable made any modification thereof erroneous as a matter of law, and "consideration by the Commission of the defendant's financial condition became unnecessary and any findings by the Commission with respect thereto were without legal consequence."

Complainants contend that a careful construction and analysis of the Commission's order shows that it intended to find only that the fuel clause was not discriminatory, and that there is no finding that it was not unjust or unreasonable. We concede that the order might have been more clearly drawn. It intermingles its findings with a history of the fuel clause, a review of the evidence and contentions of the parties, explanations, and conclusions of law, so that it presents some difficulties of interpretation. But taken as a whole, it is in substantial compliance with G.S. 62-26.3. We conclude that it did find that the fuel clause was not discriminatory, unjust or unreasonable.

G.S. 62-72 provides that where the Commission finds that a rate is "unjust, unreasonable, *insufficient or* discriminatory, *or* in anywise in violation of any provision of law, the Commission shall determine the just, reasonable and *sufficient*" rate. (Emphasis ours.) It is our view that the decision in this case turns on the matter of the *sufficiency* of the rate or rates involved. It is true that under certain circumstances the words, unjust, unreasonable, insufficient, discriminatory and unlawful, may be overlapping and inter-dependent in their meaning. At times the existence of one may be implied from the applicability of another. But the General Assembly must have intended by the insertion of all of them that each had some distinct and proper meaning.

The adoption of the fuel clause in the orders of 8 April, 1948, and 28 February, 1950, was based on findings that (1) the Power Company needed an increase in revenue; and (2) that textile and large industrial users were getting current at non-compensatory rates. Certainly these findings dealt directly with the sufficiency or insufficiency of the pertinent rate schedules.

In the instant case the complainants alleged that the Power Company no longer needs the revenue derived from the fuel clause and would have a fair return should it be revoked. This clearly raises the question of the sufficiency of the pertinent rate schedules. Both the complainants and the Power Company offered evidence on the question thus raised. The Commission found as a fact:

"1. The operating experience and financial condition of the Company are now such as to justify a reduction in the cost of the fuel adjustment clause to the customers of the Company subject to this clause.

"2. The earnings of the Company are not sufficient to justify an elimination of the fuel clause but are sufficient to justify a change in the fuel clause by changing the base rate price of coal from $6 to $7."

These findings deal directly with the sufficiency of the applicable rates. They do not necessarily involve questions as to whether the fuel clause is discriminatory, unjust or unreasonable.

The Power Company appellee insists that a reduction of rate based on financial condition can only be made after the procedure outlined in G.S. 62-124 has been followed, that is, in a general rate case. But the logic of such contention is not apparent. The orders of 1948 and 1950 which put the fuel clause into effect were made in complaint proceedings and not in general rate cases. If the Commission may increase certain rates without applying G.S. 62-124, it may also re-

duce these same rates without reference thereto. Furthermore, if the Commission may consider the insufficiency of a rate, it must necessarily consider the sufficiency thereof. G.S. 62-72 requires the Commission in a hearing under the provisions thereof to determine "just, reasonable and *sufficient*" rates.

At the hearing the Commission had before it the financial statements and balance sheets of the Power Company for the years 1948 to 1957, inclusive, the printed Annual Reports of said company for the years 1949 and 1952 to 1958, inclusive, operation analyses by a certified public accountant for the years 1948 to 1957, inclusive, a prospectus with reference to first mortgage bonds of the Power Company of 1 March, 1958, a statement to stockholders dated 1 May, 1958, the Commission's own examination of operations and rate of return for 1957, a financial study made for complainants by David A. Kosh in April, 1958, a financial study made for complainants by George E. Goldthwaite, and many other documents relating to the financial condition of the Power Company. There was ample evidence of financial condition upon which to base the findings as to the sufficiency of the particular rates.

The users of electric current generally, the Power Company or the Commission itself may institute a general rate case at any time. The case before us is not such. The Commission had before it ample evidence to support the adjustment in rate made by it.

We have already indicated that the findings of the Commission are supported by competent, material and substantial evidence. These findings dispose of complainants' assignments of error based on the proposition that the fuel clause should have been eliminated entirely. It is unnecessary to consider the assignments based on the admission of evidence, since the evidence complained of does not materially affect the findings of the Commission.

It is noted that many of the complainants in this case were protestants at the hearing in 1948 when the fuel clause was put in effect and that they did not appeal from that order.

As to the appeal of the Commission, the judgment of Judge Sharp is reversed. As to the appeal of complainants in so far as it seeks to have the cause remanded to the Commission for further findings and an order rescinding the fuel clause, the judgment below is affirmed. The Commission is directed to put into effect its order of 31 July, 1958. G.S. 62-26.13.

On Commission's appeal — Reversed.

On Complainants' appeal — Affirmed.

DENNY, J., took no part in the consideration or decision of this case.