STATE OF NORTH CAROLINA, EX REL. UTILITIES COMMISSION AND DRUG AND TOILET PREPARATION TRAFFIC CONFERENCE; NATIONAL SMALL SHIPMENTS TRAFFIC CONFERENCE, INC.; NORTH CAROLINA TRAFFIC LEAGUE, INC.; TEXTILE FIBERS AND BY-PRODUCTS ASSOCIATION, INC.; AND NORTH CAROLINA TEXTILE MANUFACTURERS' ASSOCIATION, INC., INTERVENORS v. MOTOR CARRIERS' TRAFFIC ASSOCIATION, INC., AGENT; NORTH CAROLINA MOTOR CARRIERS' ASSOCIATION, INC., AGENT; AND SOUTHERN MOTOR CARRIERS' RATE CONFERENCE, AGENT, RESPONDENTS

No. 7210UC685

(Filed 22 November 1972)

1. Carriers § 5; Utilities Commission § 6— motor carrier rates — intrastate operating ratio

Just and reasonable rates for intrastate common carriers are to be determined by the Utilities Commission on the basis of the ratios of the carriers' intrastate operating expenses to their intrastate

operating revenues, and where the ratios do not reflect an actual separation of intrastate and interstate revenues and expenses, a rate increase based thereon cannot be sustained. G.S. 62-146(g).

2. **Carriers § 5; Utilities Commission § 6— rate hearing — rejection of competent evidence**

   The Utilities Commission may not arbitrarily reject and refuse to consider competent and probative evidence in a hearing on intrastate common carrier rates.

3. **Carriers § 5; Utilities Commission § 6— motor carrier rates — consideration of carriers' evidence of operating ratios**

   In a proceeding to determine intrastate motor carrier rates, the findings of fact of the Utilities Commission affirmatively show that respondents' evidence as to their operating ratios in North Carolina was not rejected or given only minimal weight, but was considered and found unconvincing because of weaknesses specified in the Commission's order.

4. **Carriers § 5; Utilities Commission § 6— disapproval of method for determining operating ratios — similar method used in prior case**

   The Utilities Commission did not act arbitrarily in disapproving the method and formula used by respondent carriers in arriving at their intrastate operating ratios, although such method and formula were similar to those used in a prior case in which rate increases were allowed.

5. **Carriers § 5; Utilities Commission § 6— motor carrier rates — final order — stare decisis**

   Final orders with respect to motor carrier rates are not within the doctrine of *stare decisis*.

APPEAL by respondents from order of North Carolina Utilities Commission denying increases in rates and charges for intrastate freight shipments. The order issued 28 February 1972.

In an order of 19 January 1971, the Utilities Commission allowed intrastate motor carriers of general commodities an increase in rates to become effective 25 January 1971. On 3 May 1971, respondents, acting as agents for various motor carriers in North Carolina, petitioned for relief from that order so that they could file tariffs containing further rate increases. (G.S. 62-79(b) provides that before changing transportation rates which have been in effect less than one year, relief must first be obtained from the order fixing the rates.) Relief from the order of 19 January 1971 was granted and respondents filed tariffs proposing rate increases, averaging about nine percent, to become effective in July of 1971. The Commission suspended

the proposed increases, ordered an investigation and declared the matter a general rate case under G.S. 62-137. Various parties were allowed to intervene as protestants and public hearings were held in December 1971.

The Commission summarized the evidence in its order, made extensive findings of fact, and concluded in substance that evidence presented at the hearing was of insufficient probative force to support findings of fact necessary to sustain an increase in rates.

*Edward B. Hipp, Commission Attorney, and Maurice W. Horne, Assistant Commission Attorney, for plaintiff appellee North Carolina Utilities Commission.*

*Maupin, Taylor & Ellis by Thomas W. H. Alexander and Belnap, McCarthy, Spencer, Sweeney & Harkaway by Daniel J. Sweeney for intervenor appellees.*

*Bailey, Dixon, Wooten & McDonald by J. Ruffin Bailey and Ralph McDonald for respondent appellants.*

GRAHAM, Judge.

[1] Just and reasonable rates for intrastate common carriers are to be determined by the Commission on the basis of the ratios of the carriers' operating expenses to their operating revenues. G.S. 62-146(g). (An operating ratio of 100% means that for every dollar of freight revenue received, the carrier spends a dollar in operating expenses.) A determination of intrastate operating ratios must be based on revenues and expenses incurred in North Carolina alone, and where ratios do not reflect an actual separation of intrastate and interstate revenues and expenses, a rate increase based thereon cannot be sustained. *Utilities Comm. v. Tobacco Association,* 2 N.C. App. 657, 163 S.E. 2d 638.

Respondents' principal contention is that the Commission arbitrarily rejected and failed to consider evidence offered by them as to their operating ratios in North Carolina.

[2] The weight to be given the evidence and the exercise of judgment thereon are ordinarily matters for the Commission. *Utilities Commission v. Coach Co.,* 261 N.C. 384, 134 S.E. 2d 689. However, the Commission may not arbitrarily reject and refuse to consider competent and probative evidence. Rather,

it must weigh such evidence in balanced scales, and to give it only minimal consideration may constitute error of law. *Utilities Commission v. Gas Co.,* 254 N.C. 536, 119 S.E. 2d 469.

Respondents, through the testimony of R. L. Steed, Secretary of the Southern Motor Carriers' Rate Conference, offered evidence of composite intrastate operating ratios for eighteen motor carriers operating in North Carolina. This evidence tended to show ratios of more than 100% for each weight category. Evidence was also offered by several individual carriers as to their intrastate operating ratios. Through the testimony of witnesses offered by the Commission staff and protestants, the method and formula used by respondents in arriving at these ratios were attacked as being unreliable and as tending to cause the ratios to be overstated. The Commission made findings consistent with this testimony and concluded that respondents' method and formula were unreliable and therefore rendered their evidence as to operating ratios of insufficient probative value to show a need for rate increases. Significant findings of fact tending to support this conclusion include the following: (Our numbering) (1) Cost figures used by respondents in arriving at operating ratios were from the year 1970 while the shipment data to which these costs were related was obtained from the year 1971. (2) The shipment data from 1971 included data from eighteen carriers while the cost data from 1970 included data from only eight of those carriers. (3) Cost comparisons consisted of cost against cost from one year to the next without any consideration for increases in tonnage moved and revenues received. (4) The five days used by the carriers as cost-study days were Monday, Tuesday, Wednesday, Thursday and Friday of five consecutive weeks within the first quarter of 1971; the first quarter of each year is usually lightest in regards to tonnage hauled and revenue received, and the number of days and dates used for the accumulation of data to establish separations between interstate and intrastate operations is insufficient to constitute material and substantial evidence required by law. (5) Separations evidence did not establish any reasonable approximation of the ratable proportion of respondents' operating ratios on intrastate operations and when examined with other facts and circumstances is not of sufficient probative force to support findings of fact required by statute. (6) Unit cost per 1,000 ton miles for the study carriers, as far as operating expenses are concerned, required a smaller percentage of each dollar of operating revenue in

1970 and in the first half of 1971 than in any year since 1966, and that even though operating expenses increased each year since 1966, the same have been offset by increased tonnage and revenue each year.

[3] The findings of fact set forth above affirmatively show that respondents' evidence was not rejected, or given only minimal weight, but was considered and found unconvincing because of the weaknesses specified in the order. To say that the Commission erred in failing to accept respondents' evidence as accurately reflecting operating ratios would be to substitute our judgment for that of the Commission in an area where we are without authority to pass judgment. A determination by the Commission may not be reversed or modified simply because we would have reached a different finding or determination upon the evidence. *Utilities Comm. v. Telephone Co.*, 281 N.C. 318, 189 S.E. 2d 705.

The question raised by respondents' principal contention is simply whether the Commission weighed the evidence fairly and made findings of fact which are supported by competent, material and substantial evidence in view of the entire record. We hold that it did.

[4, 5] Respondents contend that the separations method and formula which they used in this case were similar to those employed in a prior case wherein rate increases were granted. (T-825, Sub 143, Order dated 19 January 1971.) For this reason, respondents say the Commission acted arbitrarily in disapproving the formula and method used in this case. We disagree. Final orders with respect to rates are not within the doctrine of *stare decisis. Utilities Comm. v. Light Co. and Utilities Comm. v. Carolinas Committee*, 250 N.C. 421, 109 S.E. 2d 253. It is noted also that in the former case respondents were advised that their method and formula should be strengthened. In its order of 19 January 1971, the Commission stated that "[w]e do not conclude that the formula and method used in making the separations in this case reflect to a certainty, accurate results, and we advise and enjoin the respondents herein to continue their efforts for improvement in this area."

In weighing the separations evidence in the former case, the Commission apparently determined that in spite of possible weaknesses in respondents' method and formula, their evidence was sufficient to show that intrastate carrier operations did

not produce sufficient revenue to provide a fair operating ratio. Here, the Commission weighed respondents' evidence and determined that because of its inherent weaknesses, as well as other factors, respondents had failed to carry the burden of proving that the proposed rates were just and reasonable. In this we find no error of law.

The burden of proving that the proposed rates were just and reasonable was upon the respondent carriers. G.S. 62-75; G.S. 62-134(c). In order to sustain this burden it was necessary for the carriers to show the ratios of their intrastate operating expenses to their intrastate revenues, because as pointed out previously, it is on the basis of such ratios that just and reasonable rates are to be determined by the Commission. G.S. 62-146(g). Here, the Commission did not reach the point of determining actual operating ratios, concluding that the evidence was of insufficient probative force to support meaningful findings as to this essential element. Since we sustain the order with respect to this determination, it is unnecessary to discuss other assignments of error. Obviously, since the Commission could not make reasonably accurate findings as to operating ratios, it could not carry out its statutory duty of determining whether the proposed rates were just and reasonable, and it correctly denied the proposed increases.

Affirmed.

Judges HEDRICK and VAUGHN concur.