State ex rel. Utilities Comm. v. Nantahala Power and Light Co.

"two agreements" theory, contend that there was no evidence that the Adams-White partnership agreed to pay interest on amounts overdue.

In the case before us, the credit application completed and signed by Dr. White contained an express provision for finance charges in the amount of 1.5% per month (or 18% per year) on balances more than 30 days past due. In light of our conclusion that Dr. White acted on behalf of Adams-White in entering the agreement with Hedgecock Supply, we hold that the finance charges were properly imposed on the Adams-White account.

IV

In summary, we hold that the error, if any, in limiting or excluding the exhibit was not prejudicial, and that the trial judge properly awarded attorneys' fees and finance charges to plaintiff Hedgecock Supply. Accordingly, the judgment is

Affirmed.

Judges EAGLES and GREENE concur.

———————

STATE OF NORTH CAROLINA EX REL. UTILITIES COMMISSION, APPELLEE v. NANTAHALA POWER AND LIGHT COMPANY, APPELLANT

No. 8810UC356

(Filed 17 January 1989)

Utilities Commission § 6— rates adjusted in rulemaking proceeding—error

The Utilities Commission erred by adjusting Nantahala's rates to reflect tax savings from the Tax Reform Act of 1986 in a rulemaking process. There is no statutory authority for the proposition that rates may be adjusted by some other method beyond those set out in N.C.G.S. § 62-133, general rate cases, or N.C.G.S. § 62-136 and N.C.G.S. § 62-137, a complaint proceeding; furthermore, *Utilities Commission v. Edmisten, Atty. General,* 294 N.C. 598 (*Edmisten III*), does not approve the rulemaking process for adjudicating rates.

Judge SMITH concurred in this opinion prior to 31 December 1988.

APPEAL by defendant from the North Carolina Utilities Commission order dated 6 November 1987. Heard in the Court of Appeals 5 October 1988.

On 22 October 1986, the Tax Reform Act of 1986 (TRA-86) was signed into law by President Reagan. One effect of the TRA-86 was to lower corporate tax rates. Other effects of the TRA-86 were to retroactively eliminate the investment tax credits as of 1 January 1987, and to require construction related costs to be capitalized and recovered through depreciation for tax purposes.

On 23 October 1986, the Commission issued an Order Initiating Investigation. In this Order, the Commission noted which types of utilities were subject to the Order (Nantahala was subject) and then ordered in part:

2. That effective January 1, 1987, each and every utility subject to the provisions of this Order shall place in a deferred account the difference between revenues billed under rates then in effect, including provisional components thereof, and revenues that would have been billed had the Commission in determining the attendant cost of service based the federal income tax component thereof on the Internal Revenue Code as now amended by the Tax Reform Act of 1986, assuming all other parameters entering into the cost of service equation are held constant.

3. That each and every utility subject to the provisions of this Order shall determine the dollar amount of the impact of the Tax Reform Act of 1986 on its annual level of income tax expense included in its North Carolina jurisdictional cost of service consistent with ordering paragraph No. 2 above and file same with the Chief Clerk of the Commission no later than November 30, 1986. Said filing shall include all workpapers and a statement of all assumptions made in complying with the foregoing requirements. Further, each affected utility in conjunction with the foregoing shall file proposed rate adjustments giving effect to the reduction in its cost of service arising from the Tax Reform Act of 1986. The Commission will consider any additional information or comments any party may wish to offer.

After the Order Initiating Investigation was handed down, the Public Staff of the North Carolina Utilities Commission filed a motion requesting the utilities subject to the order to determine the dollar impact of the TRA-86 on their rates according to the

company's last general rate case. Southern Bell Telephone and Telegraph Company filed a response in opposition to the motion of the Public Staff. The Commission adopted the motion of the Public Staff.

On 15 January 1987, Nantahala filed a compliance in accordance with the Commission's orders. In its compliance statement, Nantahala strenuously objected to a flow through of all tax rate reduction to its customers because Nantahala's most recent rate adjustment was 23 December 1983. Nantahala argued that its rate of return was only 7.75% (before an adjustment was made to reflect the change in income tax expense) while the authorized return was 12.52%. Nantahala contended its rate of return was low because of increases in costs and expenses since its last rate adjustment. Therefore, Nantahala claimed that it should not have to pass all of the reduction from the TRA-86 on to its customers.

The Public Staff filed a report on 1 May 1987 to evaluate the impact of the TRA-86. In response to the argument by several utilities that their test year was too old to represent current revenues and expenses, the Public Staff stated, "[t]his is a specious argument. While it is true that subsequent events are not considered in determining the impact of the TRA86, neither were these events considered in establishing the current rates." The Public Staff further argued that to take into account changes which occurred after the last general rate case would be "to introduce unaudited, unannualized, piecemeal increases in expenses into the scenario." The Public Staff felt the only "fair" way to look at changes subsequent to the last rate case would be to have a general rate case and therefore it was not necessary to look at recent changes in expenses in conjunction with the TRA-86.

On 12 May 1987, the Commission handed down an Order Requiring Data And Comments. In this Order, the Commission requested calculations and supporting workpapers of the flowback of excess deferred federal income taxes. The Commission also requested the utilities to file comments on their opinion "concerning the proper rate making treatment to be afforded the excess deferred income taxes."

The final order from the Commission dated 20 October 1987 and modified on 6 November 1987 required Nantahala to "calculate rate reductions related to tax savings resulting from the Tax

Reform Act of 1986 . . .” and that new tariffs be filed reflecting the calculated rate reductions.

On 30 December 1987, this Court issued a Writ of Supersedeas staying the Commission’s 20 October 1987 and 6 November 1987 orders. From this order, defendant appeals.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Jo Anne Sanford, for the State.*

*North Carolina Utilities Commission Executive Director Robert P. Gruber, by Chief Counsel Antoinette R. Wike and Staff Attorneys Paul L. Lassiter and A. W. Turner, Jr., for appellee Public Staff—North Carolina Utilities Commission.*

*Hunton & Williams, by Edward S. Finley, Jr., for appellant Nantahala Power and Light Company.*

ORR, Judge.

The dispositive issue in this case centers on the type of proceeding used by the Utilities Commission in issuing the Orders from which Nantahala appeals. The original document filed by the Commission on 23 October 1986 was captioned “Order Initiating Investigation.” Nowhere in the Order does the Commission refer to any statute upon which the Order is based or upon which the action to be taken by the Commission is authorized. However, the designation, “Docket No. M-100, Sub 113” indicates that the Commission viewed this case as a rulemaking proceeding from the outset because that docket number is assigned to rulemaking actions.

The body of the Order notes the passage of the Tax Reform Act of 1986 and the generally favorable effect that the reduction will have on utilities. It goes on to say, “It is incumbent upon this Commission to take the appropriate action as required so as to preserve and flow through to ratepayers, *as a reduction to public utility rates,* any and all cost savings realized in this regard . . . .” (Emphasis added.) It is therefore abundantly clear that the ultimate purpose of the Commission’s action was to reduce utility rates. The decretal portion of this Order concluded in part by requiring “each and every utility subject to the provisions of this Order shall determine the dollar amount of the impact of the Tax Reform Act of 1986 . . . .” Further, it was ordered that “pro-

posed rate adjustments giving effect to the reduction in its cost of service . . ." arising from the TRA-86 should be filed.

The final orders, as previously noted, required Nantahala to "calculate rate reductions related to tax savings resulting from the Tax Reform Act of 1986 . . . ." Nantahala was also ordered to file new tariffs reflecting the calculated rate reductions.

Appellant Nantahala contends that the procedure from which these Orders arise was without proper statutory authority in that a general rate case procedure as set forth in G.S. 62-133 should have been used. The Appellees, on the other hand, initially contend that the rulemaking procedure used by the Commission pursuant to G.S. 62-31 was proper and if not, then the procedure effectively complied with G.S. 62-136 and G.S. 62-137 which is described as a "complaint proceeding."

We begin by examining the statutorily authorized ways by which rates may be imposed, reduced, or raised. Article 7, "Rates of Public Utilities," sets out the various sections dealing with the issue of rates. G.S. 62-130 states, "[t]he Commission shall make, fix, establish or allow just and reasonable rates for all public utilities subject to its jurisdiction." G.S. 62-131 requires that *every* rate made, demanded or received by a public utility be "just and reasonable."

G.S. 62-133 entitled, "How rates fixed," sets out the procedure by which all general rate cases are handled. This section lists the various duties the Commission must perform when it fixes general rates for large utilities.

The statute then provides that in fixing rates for certain public utilities (including power companies), the Commission, among other things, shall ascertain the fair value of the public utility's property used and useful in providing the service rendered to the public within this State, estimate the utility's revenue under present and proposed rates, ascertain the utility's reasonable operating expenses, and fix a rate of return on the fair value of the property as will enable the utility by sound management to produce a fair profit for its stockholders.

*Utilities Commission v. Edmisten, Atty. General*, 30 N.C. App. 459, 469, 227 S.E. 2d 593, 599 (1976), *rev'd on other grounds*, 291 N.C. 451, 232 S.E. 2d 184 (1977).

G.S. 62-136 is captioned in part "Investigation of existing rates; changing unreasonable rates . . . ." This section anticipates a hearing initiated either by the Commission or upon complaint, wherein the existing rates are examined to determine if they are "unjust, unreasonable, insufficient or discriminatory" and, if so, the fixing of new rates. As noted in *Utilities Commission v. Light Co. and Utilities Comm. v. Carolinas Committee*, 250 N.C. 421, 431, 109 S.E. 2d 253, 261 (1959) by Justice Moore:

> G.S. 62-72 [now G.S. 62-136] provides as follows: 'Whenever the Commission, after a hearing had after reasonable notice upon its own motion or upon complaint, finds that the existing rates in effect and collected by any public utility for any service, product, or commodity, are unjust, unreasonable, insufficient or discriminatory, or in anywise in violation of any provision of law, the Commission shall determine the just, reasonable and sufficient rates to be thereafter observed and in force, and shall fix the same by order as hereinafter provided.' And it is further provided in G.S. 62-26.5 [now G.S. 62-80] that, 'The Commission may at any time upon notice to the public utility affected, and after opportunity to be heard as provided in the case of complaints, rescind, alter or amend any order or decision made by it.'

> A hearing pursuant to the foregoing provisions of G.S. 62-72 [62-136] and G.S. 62-26.5 [62-80] which involves a single rate or a small part of the rate structure of a public utility is called a 'complaint proceeding.' It differs from a general rate case in that it deals with an emergency or change of circumstances which does not affect the entire rate structure of the utility and may be resolved without involving the procedure outlined in G.S. 62-124 [now 62-133], and does not justify the expense and loss of time involved in such procedure. In many instances the complainants are unable to bear such expense, in others the Utility might suffer irreparable loss by the delay involved.

The scope of a G.S. 62-136 hearing, however, need not be a full general rate case action as set forth in G.S. 62-133. G.S. 62-

137, "Scope of rate case," specifically authorizes the Commission "[i]n setting a hearing on rates upon its own motion, upon complaint, or upon application of a public utility . . ." to *either* declare it to be a general rate case *or* to confine the inquiry to "the reasonableness of a specific single rate, a small part of the rate structure, or some classification of users involving questions which do not require a determination of the entire rate structure and overall rate of return." "It is within the province of the Commission to determine whether a hearing is a general rate case or a complaint proceeding. Indeed it is necessary as a matter of procedure that such determination be made in every hearing involving the establishment, *modification,* or revocation of rates." *Utilities Comm. v. Light Co. and Utilities Comm. v. Carolinas Comm.,* 250 N.C. at 431-32, 109 S.E. 2d at 261. (Emphasis added.)

The "complaint proceeding" as set forth in G.S. 62-136 and the provisions of G.S. 62-137 still focuses on the issue of reasonableness of the rates, and as such the ultimate result must address that issue. G.S. 62-136 says in part that after a finding that "existing rates . . . are unjust, unreasonable, insufficient, or discriminatory or in violation of any provision of the law, the Commission shall determine the just, reasonable, and sufficient and nondiscriminatory rates . . ." and shall fix the same. G.S. 62-137 also includes "reasonableness" as a standard of determination.

In reviewing the entire scope of Article 7, there are no other provisions dealing with the procedure by which the Commission can set or adjust rates other than G.S. 62-133, G.S. 62-136, and G.S. 62-137 (general rate cases or complaint proceedings). Appellees contend that the adjustment of rates as in the case *sub judice* is permitted via rulemaking under G.S. 62-31. The statute reads, "The Commission shall have and exercise full power and authority to administer and enforce the provisions of this Chapter, and to make and enforce reasonable and necessary rules and regulations to that end." In support of this contention, appellees cite *Utilities Commission v. Edmisten, Attorney General,* 294 N.C. 598, 242 S.E. 2d 862 (1978) (*Edmisten III*) for that proposition. We do not agree.

In *Edmisten III*, the utility applied for authority to increase rates via a surcharge based upon the perceived need to expand

exploration efforts for natural gas. The Commission in response to the application set up a rulemaking investigation limited to "the feasibility of increasing the supplies of natural gas to North Carolina." *Id.* at 600, 242 S.E. 2d at 864. The Commission then conducted hearings and took evidence on that question.

Out of this investigation, the Commission issued an Order adopting Commission Rule R1-17(h). This rule *did not* grant any specific increase in rates. Rather, "it established by rule certain procedures for participation by the utilities in exploration and drilling programs *and* for making applications for rate adjustments to recover costs and account for revenues associated with such programs." *Id.* at 601, 242 S.E. 2d at 865. (Emphasis added.) Later, upon application by a utility for such a rate adjustment pursuant to the Rule, the *Edmisten III* case was commenced.

It should be noted that in *Edmisten III* a rule was first adopted. Also, upon approval by the Commission of an exploration project:

A utility may recover the costs of its Commission-approved projects for the previous six months reporting period by filing for an increase in its rates through a tracking charge. Such increases are limited, however, to the amount by which reasonable costs of the programs exceed revenues received from them. In the event revenues received should exceed reasonable costs, the utility must file to adjust its rates downward by an amount sufficient to amortize these excess revenues over the following six months period.

*Edmisten III*, 294 N.C. at 604, 242 S.E. 2d at 866.

We thus note that in *Edmisten III*, there could be an increase in rates or a reduction based upon the evidence. In addition, "the requested rate increases will not result in increasing the applicant company's rate of return over the rate of return most recently approved for that company in a general rate case." *Edmisten III*, 294 N.C. at 607, 242 S.E. 2d at 868. Finally, the opinion points out that the issue in *Edmisten III* came up on appeal based upon G.S. 62-90(c), "Right of appeal; filing of exceptions," and that G.S. 62-137 "is inapplicable to proceedings conducted under G.S. 62-90(c) . . . ." *Edmisten III*, 294 N.C. at 608, 242 S.E. 2d at 869.

All of the factors noted above distinguish *Edmisten III* and its applicability to the case *sub judice*. First of all, in this case, there was the expressed intent in the Commission's original order to reduce rates; secondly, there was no rule actually promulgated, simply an order mandating the reduction in rates. Thirdly, there was no across-the-board application as in the rule in *Edmisten III*. In other words, there was no provision that if tax rates went up the utilities could raise rates just as they were lowered by the reduced tax rates. We conclude therefore that *Edmisten III* does not approve the rulemaking process for the purpose of adjusting rates, nor do we find any statutory authority for the proposition that rates may be adjusted by some other method beyond those set out in G.S. 62-133 or G.S. 62-136 and G.S. 62-137.

In this case, the Commission made no findings as to the reasonableness of Nantahala's then existing rates, either before or after the passage of the TRA-86. Nor does the Commission make any findings as to the reasonableness of the rates after the impact of its order requiring tax savings to be passed along to the customers. Under either a general rate case or a complaint proceeding, it is incumbent on the Commission to determine whether existing rates and proposed rates are "just, reasonable, and sufficient." *See* G.S. 62-136. Failure to do so constitutes reversible error.

We have reviewed the citations by appellees as to authority for allowing the Commission to adjust rates without following the requirements of G.S. 62-133 or G.S. 62-136. Those citations have no application to the issue before us.

Appellees attempt to circumvent the requirements of G.S. 62-133 and G.S. 62-136 by contending that a complaint case can be handled as a rulemaking proceeding thereby denying the appellant a trial-type hearing as would be required under a general rate case or a complaint proceeding. As pointed out previously, there is no authority either in our statutes or in the case law that allows rates to be adjusted by a rulemaking process. That determination must be made in either a general rate case or in a complaint proceeding where the issue of reasonableness of the rates is adequately determined and set out by the Commission in findings of fact and conclusions of law.

As noted in the dissent filed in this case by Commissioner Tate:

> The overall regulatory scheme in this state provides that rates shall be set in general rate cases or in complaint cases (G.S. 62-133, G.S. 62-134 and G.S. 62-137). This refund procedure is *neither*, and yet the Majority has decreased the rates for every utility in North Carolina in one quick stroke. The North Carolina Supreme Court has given us specific directions:
>
> 'The basic theory of utility rate making, pursuant to G.S. 62-133, is that rates should be fixed at a level which will recover the cost of the service to which the rate is applied, plus a fair return to the utility. A utility company may not properly be denied the right to charge such a rate, for the present use of its service, for the reason that, in a preceding month, the utility earned an excessive rate of return due to the fact that an expense which it was expected to incur in such previous month did not materialize. For example, rates for use of a utility's service are set at a level which will enable the company to pay, among other items, its anticipated tax expense. *If by virtue of some change in the tax law, it develops that the company did not incur the anticipated expense for the payment of which it collected revenues in prior months, its rates for present and future service may not be cut, on that account, below what it otherwise would be entitled to charge for the present or future service.*" (Emphasis added.) *North Carolina Utilities Commission v. Edmisten*, 291 N.C. 451, 468-69, 232 S.E. 2d 184 (1977).'

> The court's instructions could not be more specific. The Commission simply cannot decrease one item of expense except after a full evidentiary hearing in a complaint case or a rate case. Of course, no one's rights are prejudiced when a utility volunteers to reduce its rates.

> I acknowledge that the Tax Reform Act of 1986 (TRA-86) resulted in unanticipated revenues due to the lowering of corporate tax rates. I also acknowledge that it would be *equitable* for the utilities to return this unexpected windfall to its customers, and a number have voluntarily agreed to do so. But the Legislature has not seen fit to provide the Utilities

Commission with equitable jurisdiction, nor have any court decisions allowed us that discretion. It is not enough to find that our Orders are fair—they must also be lawful.

The Orders of the Utilities Commission as applied to Appellant are hereby reversed.

Reversed.

Judges GREENE and SMITH concur.

Judge SMITH concurred in this opinion prior to 31 December 1988.