228 P.2d 749

ARIZONA CORPORATION COMMISSION et al. v. MOUNTAIN STATES TEL. & TEL. CO.

No. 5352.

Supreme Court of Arizona.

March 12, 1951.

Fred O. Wilson, Atty. Gen., Richard C. Briney, Asst. Atty. Gen., and Mr. Joseph P. Ralston, Phoenix, of counsel, for appellants.

Fennemore, Craig, Allen & Bledsoe, of Phoenix, and J. H. Shepherd, Denver, Col., of counsel, for appellee.

LA PRADE, Justice.

The Mountain States Telephone and Telegraph Company, a public service corporation engaged in the telephone business in Arizona and elsewhere, hereinafter called the company, on January 26, 1949 applied to the Arizona Corporation Commission, hereinafter called the commission, for permission to raise its telephone rates for its intrastate exchange and long distance telephone service, theretofore fixed for the company by the commission, on the ground that the same were not just and reasonable and were confiscatory. After a full hearing, at which much evidence was presented, all requested increases were denied by the commission on July 29, 1949. On August 9th a petition for rehearing was filed, which was granted, and a rehearing was had October 24th through October 28th at which additional evidence was presented. On November 4th, any increase was again denied.

On November 12th a suit to set aside these orders was commenced in the Superior Court of Maricopa County and on November 29th the company filed a motion for temporary relief by allowing it to charge certain rates set forth in the motion, and it was stipulated that the motion and the case on its merits might be considered on the record and evidence already made before the commission and a certain transcript of evidence in an independent matter, a complaint upon the telephone service in the Bisbee exchange. The whole case was argued and briefed and the court finally rendered its judgment on February 28, 1950, upon its findings of fact, that:

(a) the previous schedule of rates retained by the orders of the corporation commission do not provide a fair and reasonable return on the company's property and result in the confiscation of the company's property, contrary to the provisions of law;

(b) that the commission failed to find the fair value of the company's property, and the fair rate of return to be allowed thereon;

(c) that although the commission found a deficiency in the existing telephone facilities, they failed to make an allowance for a fair return on the additional investment required to create such facilities;

(d) that a deficiency still exists in the quantity of facilities available;

(e) and that confiscation of the company's property will continue to exist under the then existing schedules pending a determination of just and reasonable rates by the commission.

"(f) Pending the action of the defendant commission in fixing a just and reasonable schedule of rates, the telephone subscribers and rate payers in Arizona should be adequately protected against imposition of unjust and unreasonable rates by requiring the plaintiff to post a bond in an amount to be determined; the condition of such bond being that should the rates which the plaintiff puts into effect be higher than the rates which are finally determined to be just and reasonable, then plaintiff will refund to its subscribers the excess which it has collected over and above the amount the plaintiff would have collected had the rates finally determined to be just and reasonable been in effect; that if the rates finally determined to be just and reasonable are equal to or more than the temporary rates to be placed in effect, then the bond shall be discharged."

The judgment decreed:

1. That the orders appealed from were unlawful, and set them aside;

2. Remanded the cause to the commission for a determination of the fair value of plaintiff's property devoted to the public service in the state of Arizona and the determination of a fair rate of return to be allowed thereon, and for the fixing of just and reasonable rates on the basis of such determination;

3. That pending the final determination of just and reasonable rates by the commission, the company might put into effect a schedule of rates which would prevent the confiscation of its property and required a bond to guarantee the refund of any charges made in excess of the rates to be established by the commission. This portion of the judgment was essentially in the language of finding (f), supra. Bond in the sum of $250,000.00 was fixed and posted.

■ From this judgment the commission appealed. While the notice of appeal is from the judgment and the whole thereof, the commission has presented only one assignment of error and that is addressed to paragraph 3 of the judgment, supra. Its arguments are addressed only to this assignment. Accordingly, the findings of the lower court, (a) to (e) both inclusive, supra, all remain unchallenged by this appeal. All of these findings have acquired the status of finality and fixed the

law of the case as regards the commission's future action, regardless of the decision on this appeal.

At the time this case was submitted for decision in this court, nine months had elapsed during all of which time the commission had made no attempt to carry out the court's judgment and put into effect a schedule of rates that would not be confiscatory, evidencing a callous disregard of their duty, to the company's financial detriment. This want of consideration and indurate attitude toward the company and the judgment of the lower court is highlighted by the fact that no appeal is here presented from the judgment proclaiming that the rates theretofore established by the commission were unjust, unreasonable, and confiscatory.

Appellants recognize that there may be an appeal from the orders of the commission and that the courts have jurisdiction *to set aside its orders fixing rates found* by the courts to be confiscatory and hence in violation of the due process clauses of the state and federal constitutions, but they say that in Arizona—courts are precluded under our constitution from going any farther, and the courts' jurisdiction is thereupon terminated; in other words, the court has no power to permit the company to put into effect rates protected by bond pending further action by the commission. They contend that the court, having found and adjudged a wrong exists, has no inherent power to provide relief pending the correction of the unlawful commission orders. And finally, they contend the court's power and jurisdiction is limited to the right to order the commission to afford temporary relief by the fixing of temporary rates, pending further action by the commission, to be enforced by mandamus or contempt proceedings.

The sole question, therefore, before this court is one of jurisdiction, for in view of the fact that the record showed the commission had failed for nine months after the company had applied for relief to grant any, and that the trial court had reasons to believe such a situation would continue for an unreasonable time and in fact has continued for almost a year *after* judgment, it is obvious that unless in *some manner* there was immediately established a temporary rate which the company might collect it would have been compelled long since either to operate for an indefinite time with insufficient revenue or to suspend operations during this period, with consequences to business and society in Arizona truly appalling.

■ A similar question has arisen in many states and it has practically invariably been held that when, as here, the action is based on the claim that the existing rate fixed by public authority is confiscatory and therefore unjust and unreasonable, the proper remedy is for the court to allow the company to fix and collect, pending the determination *by the court* that a legal rate has been fixed by the

proper public authority, a temporary rate on .giving proper security for reimbursing its customers for the repayment of overcharges based on such rate if it be later determined to be excessive, and this is true when the rate-making body is established either by constitution, as in Idaho, Georgia, and other states, or by legislation as in Illinois, Pennsylvania, and Kansas. One of the leading cases dealing with this subject is City of Hutchinson v. Hutchinson Gas Co., 125 Kan. 346, 264 P. 68, 74. The court therein reviewed and considered many cases, and says:

"To conclude: When a gas rate prescribed by official authority has been set aside as noncompensatory by a court of competent jurisdiction, the utility company may prescribe and collect reasonable rates of its own making until other lawful rates are promulgated by official authority; and the ad interim rates prescribed by the utility company cannot be summarily enjoined by another district court in independent proceedings, although by proper ancillary proceedings the court which enjoined the officially prescribed rates as being too low may similarly enjoin the ad interim rates prescribed by the utility company if they are shown to be excessively high. * * * "

The same rule is approved in Corpus Juris, Vol. 51, Public Utilities Section 26, in this language: "When rates established by the state or under its authority are set aside or otherwise become of no effect, a public utility has the right to establish its own rates, subject to the ordinary requirements of reasonableness. A rate so established by the utility is in force until it is modified or a different rate is fixed by proper authority."

The commission does not deny that this is the general rule but contends that our constitution is sui generis on this point and that it denies the jurisdiction of the Arizona courts under that constitution to make such an order. It is true that section 3, article 15 of the Arizona constitution, which reads as follows: "3. [*Powers to regulate rates, service.*]—The corporation commission shall have full power to, and shall, prescribe just and reasonable classifications to be used, and just and reasonable rates and charges to be made and collected, by public service corporations within the state for service rendered therein, and make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the state, and may prescribe the forms of contracts and the systems of keeping accounts to be used by such corporations in transacting such business, and make and enforce reasonable rules, regulations, and orders for the convenience, comfort, and safety, and the preservation of the health, of the employees and patrons of such corporations; Provided, that incorporated cities and towns may be authorized by law to exercise supervision over public service corporations do-

ing business therein, including the regulation of rates and charges to be made and collected by such corporations; Provided further, that classifications, rates, charges, rules, regulations, orders, and forms or systems prescribed or made by said corporation commission may from time to time be amended or repealed by such commission", grants great power to the commission in its fixing of rates of public service corporations, and this court has repeatedly so held. The leading and original case on the subject is that of State v. Tucson Gas, Electric Light & Power Co., 15 Ariz. 294, 138 P. 781, 786. Therein the court said: "We are of the opinion that the people, by their Constitution, have said, in plain and unequivocal language, that 'the Corporation Commission shall have full power to, and shall, prescribe just and reasonable classifications to be used, and just and reasonable rates and charges to be collected, by public service corporations within the state for services rendered therein and (shall) make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the state,' and that the power therein granted to the Commission is exclusive, and not to be exercised by the Legislature. For if 'such corporations' *'shall be governed* in the transaction of business' by the Commission in the enumerated matters, there is an implied exclusion of power in any other body or department

to prescribe classifications, rates, charges, rules, regulations, or orders."

And it again considered the general question as to the powers of the commission in Arizona Corp. Comm. v. Heralds of Liberty, 17 Ariz. 462, 154 P. 202; Arizona Eastern Rd. Co. v. State, 19 Ariz. 409, 171 P. 906; Pacific Gas & Electric Co. v. State, 23 Ariz. 81, 201 P. 632; Yuma Gas, Light & Water Co. v. City of Yuma, 20 Ariz. 153, 178 P. 26; Phoenix Ry. Co. v. Lount, 21 Ariz. 289, 187 P. 933, and Haddad v. State, 23 Ariz. 105, 201 P. 847; Menderson v. City of Phoenix, 51 Ariz. 280, 76 P.2d 321; Northeast Rapid Transit Co. v. City of Phoenix, 41 Ariz. 71, 15 P.2d 951. The last case considering the question is that of Ethington v. Wright, 66 Ariz. 382, 189 P.2d 209. All of these cases, except the last, were reviewed and reconsidered in Corporation Comm. v. Pacific Greyhound Lines, 54 Ariz. 159, 94 P.2d 443. It will be noted, however, that each and all of these cases dealt with the action of the *legislative* branch of the government and not with the *judicial* branch. This court has never considered the question of whether our constitution denied to our courts the right to determine whether any orders of the commission made in attempting to assert its plenary powers in the field of prescribing classifications, rates, and charges to be made by public service corporations violated other provisions of the constitution, such as Article 2, section 4 thereof, commonly known as the due

process clause, in the same manner and with the same jurisdiction and remedies they possessed over other executive and legislative officers. Article 15, section 17, of the constitution, reads as follows:

"17. [*Appeals*.]—Nothing herein shall be construed as denying to public service corporations the right of appeal to the courts of the state from the rules, regulations, orders, or decrees fixed by the corporation commission, but the rules, regulations, orders, or decrees so fixed shall remain in force pending the decision of the courts."

 The only limitations placed by this article on the jurisdiction of the courts to deal with appeals from the rules, regulations, orders, and decrees made by the corporation commission is that these shall remain in force *pending the decision of the courts*. In other words, while in most states the courts can and often do enjoin the orders of public service regulatory bodies, as soon as a suit alleging that the orders are confiscatory and therefore in violation of the due process clause of the various constitutions is *filed,* in Arizona such an order may not be made until *after* the court has decided the issue, and this limitation was carefully observed by the trial court in the present case, for it did not issue the order complained of until *after* it had held the existing orders of the commission regarding the rates of the company were unjust, unreasonable, and confiscatory. The court has been cited to

no other constitutional or statutory limitation of the jurisdiction of the superior court over orders of the corporation commission which have been held by the court to be unconstitutional. In general, the jurisdiction of the superior court has been determined by this court in the case of State ex rel. Davis v. Osborne, 14 Ariz. 185, 125 P. 884, 885:

"The superior courts have jurisdiction in all causes and of all proceedings in which jurisdiction shall not have been vested exclusively in some other court. The Supreme Court has appellate jurisdiction in all actions and proceedings except a civil action to recover money or property where the original amount in controversy does not exceed the sum of $200. Our courts are not divided into courts of equity and courts of common-law jurisdiction, as is the case in those jurisdictions whose authorities, if superficially considered, would lend color to the view that courts will not decide questions of a political nature. The jurisdiction in law and in equity under our scheme of government is blended in one court which may give appropriate judgment in all cases according to the law and the facts as they may arise."

 But, says the commission, under the Arizona constitution a public service corporation can under *no circumstances* fix a rate for its services, though it does not cite any specific constitutional or statutory provision to that effect. It apparently relies in the main on the case of El Paso

& Southwestern Ry. Co. v. Arizona Corp. Comm., D.C., 51 F.2d 573, 576. This was an action claiming a recovery of excessive rates paid by certain shippers. The court held that when certain rates had been established by the Interstate Commerce Commission and the carrier had charged and collected such rates it could not be compelled to refund an amount in excess of a rate fixed by the commission *after the carrier had collected the earlier rate.* In its opinion the court said, referring to the Arizona Corporation Commission: *"The carrier is precluded from initiating rates as under the federal plan, and may only charge and collect those rates that have been approved and prescribed by the Commission"* (emphasis supplied), and referring to Section 69–252, A.C.A.1939, the court said: "This provision of the act must necessarily refer to rates and charges made and collected in excess of those fixed and prescribed by the Commission, *as the carrier is not permitted to charge or collect any sum whatever until after the Commission has prescribed 'just and reasonable rates and charges to be made and collected.' "* (Emphasis supplied.)

There was no question involved in the case of confiscation by the rates in question or of the due process provisions of the federal or state constitutions, the real issue being the *retroactive effect* of a rate change by the Interstate Commerce Commission. We think the language quoted was unnecessary to sustain the judgment of the court and that it is, properly considered, only dictum, and that had the question been one of the preservation of property pending the fixing of a constitutional rate by the public body authorized to do so, the court would have made a very different statement. The case is not an authority on the issue involved in the present case. Of the many cases cited by counsel for the commission and for the company, we think that of Southern Bell Tel. & Tel. Co. v. Georgia Public Service Comm., 203 Ga. 832, 49 S.E.2d 38, 41, most closely resembles the issues involved herein. We quote therefrom as follows:

"5. Utility rate making is legislative in nature, and the power to make such rates in this State is by the constitution and laws vested exclusively in the Georgia Public Service Commission.

"6. While courts of equity have and can exercise no jurisdiction to make public utility rates, yet they do have jurisdiction in all cases properly brought before them to render judgments enjoining confiscatory rates, thus preventing impingement of the constitutional rights of public utility companies. And where it is shown that utility rates fixed by the Public Service Commission are confiscatory and, therefore, result in taking the private property of a public utility company for public use without due process, a court of equity will not hesitate to take judicial action and enjoin the enforcement of such confiscatory rates.

\* \* \* \* \* \*

"8. Although a court of equity can not make utility rates, such a court can, in the exercise of its jurisdiction, attach to the judgment enjoining the confiscatory rates a condition that the public utility company may not collect rates that will produce revenue in excess of a stated amount which in the judgment of the court is the amount necessary to avoid confiscation. *Where the rate order is enjoined, the utility company could fix its rates until reasonable rates are fixed by the Public Service Commission.*" (Emphasis supplied.)

See also Southwestern Bell Telephone Co. v. State, 202 Okl. 291, 214 P.2d 715.

 The remedies suggested by the commission are mandamus and contempt proceedings. The judgment already rendered by the trial court is in effect a mandamus and the commission for a long period failed to obey the order, although it has never contended the court exceeded its jurisdiction in ordering it to establish a proper rate. A mandamus would merely be a repetition of an existing order with time limitations. Contempt proceedings—while they might perhaps punish the individual members of the commission—would not protect the right of the company to be guarded against interim confiscation. The portion of the judgment complained of in no manner interferes with the jurisdiction of the commission to establish a just and reasonable rate but expressly allows the rates suggested by the company only "pending the final determination of just and reasonable rates by the commission".

We are of the opinion that the trial court not only had jurisdiction to make the order complained of but that it would have been an abuse of discretion to have refused it.

The judgment is affirmed.

UDALL, C. J., and STANFORD, PHELPS and DE CONCINI, JJ., concur.