578 P.2d 612

**Edward G. SCATES and Rozella Castillo, Appellants,**

v.

**ARIZONA CORPORATION COMMISSION, Al Faron, Bud Tims, and Ernest Garfield, Members of the Arizona Corporation Commission, and Mountain States Telephone and Telegraph Company, Appellees.**

**No. 1 CA–CIV 3669.**

Court of Appeals of Arizona,
Division 1,
Department B.

Feb. 3, 1978.

Rehearings Denied April 20, 1978.

Reviews Denied May 9, 1978.

---

Arizona Center for Law in the Public Interest by Kenneth Sundlof, Bruce Meyerson, Phoenix, for appellants.

Bruce E. Babbitt, Atty. Gen., by Charles S. Pierson, Michael M. Grant, Asst. Attys. Gen., Phoenix, for appellees, Arizona Corp. Commission.

Fennemore, Craig, von Ammon & Udall, P. C., by C. Webb Crockett, George T. Cole, Phoenix, for appellees, Mountain States Tel. & Tel. Co.

## OPINION

SCHROEDER, Judge.

This appeal concerns the validity of the Arizona Corporation Commission's approval of an application by Mountain States Telephone and Telegraph Company for an increase in rates. The increase affected charges for all installation, moving and changing of telephones within the State of Arizona. It amounted to an annual rise in revenue to Mountain States of approximately 4.9 million dollars, representing about two percent of its entire annual revenue in the state. The Commission approved the increase without any examination of the costs of the utility apart from the affected services, without any determination of the utility's investment, and without any inquiry into the effect of this substantial increase upon Mountain States' rate of return on that investment. We hold that the Commission's action was in violation of Arizona's constitutional provisions regarding rate making as consistently interpreted by the courts of this state, and we reverse the judgment of the trial court upholding the increase.

The application in question was filed by Mountain States on November 4, 1975, and public hearings were held on December 2 and 3, 1975. This application was filed approximately ten months after the Commission had conducted a full scale hearing to establish rates for all Mountain States' services. The hearing on this application was also held approximately two months prior to the scheduled date for another general rate hearing, set for February, 1976.

At the hearing on this application, several parties were permitted to intervene. They included businesses and the appellants herein, Edward Scates and Rozella Castillo who, as individual customers of Mountain States, would be affected by the requested increase. Throughout the hearing the Commission took the view that this increase should be considered solely on the basis of evidence reflecting the costs of these particular services. Thus, Mountain States put on evidence that the charges for these particular services, approved at the last rate hearing, covered only approximately 41 percent of the company's costs for those services, and that the increases sought would cover approximately 64 percent of costs. However, Mountain States' own attempt to submit summary data, based upon the prior submissions to the Commission showing the effect of the proposed increase on its rate of return was rejected by the Commission, and all references to the effect of this increase on the company's overall financial condition were stricken.

On December 12, 1975, the Commission approved the increase as requested by Mountain States, summarily concluding that it was just and reasonable, and ordered its immediate implementation. A motion for rehearing was filed by the appellants, and after its denial, the appellants filed this action in the Superior Court. The Superior Court, on summary judgment, upheld the Commission's order, and this appeal followed.

■ In Arizona, the Corporation Commission is the body charged with the responsibility for establishing utility rates which are "just and reasonable." Ariz.Const. art. 15, § 3; A.R.S. § 40–250. The general theory of utility regulation is that the total revenue, including income from rates and charges, should be sufficient to meet a utility's operating costs and to give the utility

and its stockholders a reasonable rate of return on the utility's investment. *See Simms v. Round Valley Light & Power Co.,* 80 Ariz. 145, 153, 294 P.2d 378, 383 (1956); *see generally* Phillips, The Economics of Regulation 178–302 (Rev. ed. 1969). To achieve this, the Commission must first determine the "fair value" of a utility's property and use this value as the utility's rate base. *Arizona Corp. Comm'n v. Arizona Pub. Serv. Co.,* 113 Ariz. 368, 370, 555 P.2d 326, 328 (1976). The Commission then must determine what the rate of return should be, and then apply that figure to the rate base in order to establish just and reasonable tariffs. *Id.*

■ While the Corporation Commission has broad discretion in establishing rates, *id.,* it is required by our Constitution to ascertain the value of a utility's property within the State in setting just and reasonable rates. Ariz.Const. art. 15, § 14.

An early case so interpreting our Constitution is *State v. Tucson Gas, Electric Light & Power Co.,* 15 Ariz., 294, 138 P. 781 (1914), in which the Court stated that § 14 was written into our Constitution in order for the Corporation Commission to "act intelligently, justly and fairly between the public service corporations doing business in the state and the general public . . . ." *Id.* at 303, 138 P. at 784. The court went on to state the

> " 'fair value of the property' of public service corporations is the recognized basis upon which rates and charges for services rendered should be made, and it is made the duty of the Commission to ascertain such value, not for legislative use, but for its own use, in arriving at just and reasonable rates and charges . . ." *Id.* at 303, 138 P. at 785.

In a later case, while considering whether the Commission could reduce the rates without determining the fair value, our Supreme Court affirmed the principle that the value of a utility's property must be considered in setting just and reasonable rates:

> "It is clear . . . that under our constitution as interpreted by this court, the commission is required to find the

fair value of [the utility's] property and use such finding as a rate base for the purpose of calculating what are just and reasonable rates. . . . While our constitution does not establish a formula for arriving at fair value, it does require such value to be found and used as the base in fixing rates. The reasonableness and justness of the rates must be related to this finding of fair value." *Simms v. Round Valley Light & Power Co.,* 80 Ariz. 145, 151, 294 P.2d 378, 382 (1956).

■ Thus, the rates established by the Commission should meet the overall operating costs of the utility and produce a reasonable rate of return. It is equally clear that the rates cannot be considered just and reasonable if they fail to produce a reasonable rate of return or if they produce revenue which exceeds a reasonable rate of return.

In this case, the Corporation Commission approved an increase of almost five million dollars on the rates charged for certain services with no concomitant reduction in the charges for other services. The resulting net increase in revenue to the utility was accomplished without any inquiry whatsoever into whether the increased revenues resulted in a rate of return greater or lesser than that established in the rate hearing some ten months before. All evidence bearing on the subject was expressly rejected. Although all parties before the Commission generally agreed that it would be improper to implement an increase of all rates without such inquiry, we see no justification for permitting the same increase in revenues to be accomplished by raising only some of the tariffs. As special counsel for the Commission's staff pointed out during the course of this hearing, such a piecemeal approach is fraught with potential abuse. Such a practice must inevitably serve both as an incentive for utilities to seek rate increases each time costs in a particular area rise, and as a disincentive for achieving countervailing economies in the same or other areas of their operations.

In support of its position, Mountain States points to two situations in which

some courts have permitted rate increases to be effected without a simultaneous determination of their effect on the company's rate of return. These are interim rate increases and increases caused by the use of automatic adjustment clauses. On close analysis, these devices do not provide any support for the Commission's action in this case.

■ An interim rate is a rate permitted to be charged by the utility for products or services pending the establishment of a permanent rate.

"Interim rates are employed to fill a hiatus which occurs between the time that existing rates being charged by a public service corporation have been invalidated by a court or have been determined by the appropriate regulatory body to be confiscatory of the corporation's property, and the time that permanent rates which produce a fair return are established." 71–17 Op. Att'y Gen. (1971).

In Arizona, our Supreme Court has allowed the Superior Court to authorize such a temporary increase pending a final determination by the Commission of permanent rates. *Arizona Corp. Comm'n v. Mountain States Telephone & Telegraph Co.*, 71 Ariz. 404, 228 P.2d 749 (1951). The Attorney General has concluded, based upon this authority, that the Commission itself may establish such interim rates, but only with appropriate safeguards to insure that rates will not become permanent until there is adequate inquiry into whether they are just and reasonable. The opinion goes on to point out that such a device should be used only in limited situations where an emergency exists, where a bond is posted guaranteeing a refund to the utility's subscribers if any payments are made in excess of the rates eventually determined by the Commission, and where a final determination of just and reasonable rates is to be made by the Commission after it values a utility's property. The action of the Commission in the instant case in approving a permanent increase lacked all of these safeguards and was not in any material way similar to adoption of an interim rate increase.

■ The automatic adjustment clause is a device to permit rates to adjust automatically, either up or down, in relation to fluctuations in certain, narrowly defined, operating expenses. *See generally,* Foy, *Cost Adjustment in Utility Rate Schedules,* 13 VandL.Rev. 663 (1960); Trigg, *Escalator Clauses in Public Utility Rate Schedules,* 106 U.Pa.L.Rev. 964 (1958); *Note, Due Process Restraints on the Use of Automatic Adjustment Clauses in Utility Rate Schedules,* 18 Ariz.L.Rev. 454 (1976). Such clauses usually embody a formula established during a rate hearing to permit adjustment of rates in the future to reflect changes in specific operating costs, such as the wholesale cost of gas or electricity. *E. g., Consumers Organization for Fair Energy Equality, Inc. v. Department of Pub. Utilities,* 335 N.E.2d 341, 343 (Mass.Sup.Jud.Ct. 1975); *City of Norfolk v. Virginia Electric & Power Co.,* 197 Va. 505, 90 S.E.2d 140, 148 (1955).

"[T]he impact of certain increased or decreased costs are passed on to the consumer so that the utility neither benefits from a decreased cost nor suffers a diminished return as a result of an increase in a cost covered by the adjustment clause." 71–15 Op. Att'y Gen. (1971).

■ Thus, although a utility may receive increased gross revenues when utility rates increase under automatic adjustment clauses, a utility's net income should not be increased, because operating costs also will have risen to offset the increased revenue. *See Maestas v. New Mexico Pub. Serv. Comm'n,* 85 N.M. 571, 514 P.2d 847 (1973).

When courts have upheld such automatic adjustment provisions, they have generally done so because the clauses are initially adopted as part of the utility's rate structure in accordance with all statutory and constitutional requirements and, further, because they are designed to insure that, through the adoption of a set formula geared to a specific readily identifiable cost, the utility's profit or rate of return does not change. *E. g., Consumers Organization for Fair Energy Equality, Inc. v. Department*

*of Pub. Utilities,* 335 N.E.2d 341 (Mass.Sup. Jud.Ct.1975); *State ex rel. Utilities Comm'n v. Edmisten,* 291 N.C. 327, 230 S.E.2d 651 (1976); *City of Norfolk v. Virginia Electric & Power Co.,* 197 Va. 505, 90 S.E.2d 140 (1955). *See also* 71–17 Op. Att'y Gen. (1971). In *State ex rel. Utilities Comm'n v. Edmisten,* the Court, for example, in justifying the use of the clause to isolate only one element of the utility's cost, stated that the clause was

> "approved *only as an adjunct, or rider, to the utility's other general rate schedules which the Commission had simultaneously under consideration.* The Commission approved the clause not as an isolated event but as a rider to general rate schedules in which all elements of cost were duly considered." 230 S.E.2d at 659.

We find no material similarity between the procedure used in this case by the Commission and the adoption of an automatic adjustment clause. The Commission did not consider all of the utility's costs when it approved this raise. The elements of cost which it did consider were not easily segregated costs of specific purchased items such as fuel or electricity; rather they included all the operating expenses underlying moving, installation and changing of telephones. The effect of the increase on the rate of return was ignored.

During the course of the hearing itself, the principal authorities relied upon by the Commission in restricting its inquiry were two North Carolina cases: *State ex rel. Utilities Comm'n v. Carolinas Comm. for Indus. Power Rates & Area Dev., Inc.,* 257 N.C. 560, 126 S.E.2d 325 (1962); *State ex rel. Utilities Comm'n v. Carolina Power & Light Co.,* 250 N.C. 421, 109 S.E.2d 253 (1959). These cases do not support the action of the Commission here.

These cases were decided under a special North Carolina statute authorizing in certain circumstances a "complaint proceeding" rather than a rate proceeding. The

court limited use of the North Carolina "complaint proceeding" to situations involving "an emergency or change of circumstances which does not affect the entire rate structure of the utility . . . ." *State ex rel. Utilities Comm'n v. Carolina Power & Light Co.,* 109 S.E.2d at 261. The Commission in this proceeding did not purport to follow any special "complaint" procedure.[1] This proceeding was at all times considered to be a proceeding under A.R.S. § 40–250 applying to rate increases.

In addition, the facts in this case are not materially similar to those in the North Carolina cases. The Commission here never determined that there was an emergency; Mountain States did not claim that there had been a change in circumstances since the last rate hearing and, in fact, admitted that the information in which the increase was based was substantially available at the time of the previous rate hearing. This rate increase does not apply to a very small class of customers, but to all customers who as of and after the date of the increase had phones installed, moved or changed. Moreover, the increase in issue in both North Carolina cases related to the increased cost of fuel, and in both cases there was general financial evidence supporting administrative approval of the rate changes. Thus, in *State ex rel. Utilities Comm'n v. Carolina Power & Light Co.,* the Commission had before it financial statements and balance sheets of the Power Company for the ten preceding years, 109 S.E.2d at 263; in *State ex rel. Utilities Comm'n v. Carolinas Comm. for Indus. Power Rates & Area Dev., Inc.,* the new rate schedule was a modernization designed to produce the same revenue as had been earned under the old schedule. 126 S.E.2d at 328. No such showings have been made here.

Appellees point to the complexity of full scale rate hearings, as illustrated by general order R14–2–128 (formerly designated

---

1. A.R.S. §§ 40–246 and 249 authorize proceedings known as "complaint proceedings" with respect to rates. An opinion of the Arizona Attorney General suggests that if a complaint proceeding is instituted and the Commission

determines that a hearing with respect to a rate change is warranted, then restricted procedures such as those followed by the Commission in this case would be inappropriate. 69–6 Op. Att'y Gen. (1969).

"general order U–53") promulgated by the Corporation Commission requiring very extensive submissions by a utility concerning its financial condition in connection with general rate hearings. Appellees argue that Mountain States should not be required to undergo the time and expense of preparing such submissions anew when all that is sought is a partial rate increase.

The extensive requirements of the order reflect the type of information which, in the Commission's view, should be looked at in order to determine "just and reasonable rates" although we note that the order itself makes provision for a waiver of its requirements in appropriate cases.[2]

█ We do not need to decide in this case whether as a matter of law there must be a de novo compliance with all provisions of the order in connection with every increase in rates. The Commission here not only failed to require any such submissions, but also failed to make any examination whatsoever of the company's financial condition, and to make any determination of whether the increase would affect the utility's rate of return. There may well be exceptional situations in which the Commission may authorize partial rate increases without requiring entirely new submissions. We do not decide in this case, for example, whether the Commission could have referred to previous submissions with some updating or whether it could have accepted summary financial information. We do hold that the Commission was without authority to increase the rate without any consideration of the overall impact of that rate increase upon the return of Mountain States, and without, as specifically required by our law, a determination of Mountain States' rate base. *Simms v. Round Valley Light &*

*Power Co.*, 80 Ariz. 145, 294 P.2d 378 (1956); Ariz.Const. art. 15, § 3; A.R.S. § 40–250. The Commission not only failed to make any findings to support its conclusion that the increases were just and reasonable, but it received no evidence upon which such findings could be based.

█ Finally, appellees argue as a procedural matter that the only question properly before us is whether the Commission should have required and considered entirely new data submissions on all aspects of Mountain States' operations before approving these increases. Appellees assert that such a requirement was the only ground raised on appellants' application for rehearing before the Commission. Appellees rely upon A.R.S. § 40–253(C) which provides that parties may not rely in court upon the grounds not set forth in an application for rehearing before the Commission.[3]

We do not construe the application for rehearing filed by appellants in this case as limited to the assertion that entirely new general order R14–2–128 submissions and a de novo determination of rate base were required; rather, appellants argued at all times that the Commission lacked authority to increase Mountain States' rates without considering the impact of the increase on the overall financial condition of the utility and, specifically without taking into account the rate base and the effect of the increase on the rate of return. The principal authorities relied upon before the Commission were the same as those relied upon in the Superior Court and before this Court.

"The purpose of this provision [A.R.S. § 40–253(C)] is to afford the Commission the opportunity to correct its own mistakes before the matter is brought to court. *See*

---

**2.** R14–2–128 B. 5. reads as follows: "Waiver of requirements: Either prior to the filing or within 15 days from the date thereof, the Commission, after determining the existence of reasonable cause, by order may waive compliance with any or all of the requirements of this General Order. Such Waiver will be granted only upon written petition to the Commission. In said petition, the utility must demonstrate that the requirements sought to be waived are either not applicable to the rate matter which is

the subject of the filing or that compliance therewith would place an undue burden on the utility." The record in this case does not show that any such waiver was sought or granted.

**3.** A.R.S. § 40–253(C) provides: "The application shall set forth specifically the grounds on which it is based, and no person, nor the state, shall in any court urge or rely on any ground not set forth in the application."

*State v. Arizona Corporation Comm'n,* 94 Ariz. 107, 382 P.2d 222 (1963)." *Horizon Moving & Storage Co. v. Williams,* 114 Ariz. 73, 75, 559 P.2d 193, 195 (Ct.App.1976). As our Supreme Court stated in *State ex rel. Church v. Arizona Corporation Comm'n,* 94 Ariz. 107, 382 P.2d 222 (1963), the requirement of A.R.S. § 40–253(C) is satisfied "if the legal or factual point now relied upon was raised in the petition for rehearing." *Id.* at 112, 382 P.2d at 225.

For the foregoing reasons, the judgment of the Superior Court is reversed and the matter is remanded with instructions to set aside the order of the Corporation Commission entered December 12, 1975.

Reversed and remanded.

EUBANK, P. J., and WREN, J., concur.