124 Ariz. 433 (1979)
604 P.2d 1144
The MOUNTAIN STATES TELEPHONE AND TELEGRAPH COMPANY, a Colorado Corporation, Plaintiff-Appellant,
v.
ARIZONA CORPORATION COMMISSION and Ernest Garfield, Bud Tims and Jim Weeks, as members of the Arizona Corporation Commission, Defendants-Appellees.
No. 1 CA-CIV 4724.
Court of Appeals of Arizona, Division 1, Department B.
August 2, 1979.
Rehearing Denied December 13, 1979.
Review Denied January 15, 1980.
Fennemore, Craig, von Ammon & Udall, P.C., by C. Webb Crockett, George T. Cole, Phoenix, for plaintiff-appellant.
*434 Murphy & Storey, P.A., by James W. Mueller, Robert T. Murphy, Phoenix, for defendants-appellees.
Arizona Center for Law in the Public Interest by Bruce Meyerson, Phoenix, for intervenors.
OPINION
SCHROEDER, Presiding Judge.
In 1978, this Court rendered its decision in Scates v. Arizona Corporation Commission, 118 Ariz. 531, 578 P.2d 612 (App. 1978). We held that an increase in rates for certain services by appellant, Mountain States Telephone and Telegraph Company, was invalid because the Corporation Commission's approval of the rate hike violated Article XV, § 14, of the Arizona Constitution. The Arizona Supreme Court denied review of that decision. After issuance of the mandate requiring the Corporation Commission to set the rate increase aside, the Corporation Commission ordered Mountain States to refund the excess rates collected between the time of the Commission's initial approval in December 1975 and issuance of the mandate in Scates in 1978. The amounts involved exceed eleven million dollars. Mountain States sought review in superior court pursuant to A.R.S. § 40-254.
At the original 1975 proceedings Mountain States sought increased rates solely with respect to charges on installation, moving and changing of telephones. As set forth more fully in our decision in Scates, the Commission approved the rates exclusively on the basis of evidence relating to costs for those particular charges, and without regard to the utility's rate base or the effect of the limited rate hike on Mountain States' rate of return on all of its services. The Commission acted in disregard of the constitutional provision requiring it to ascertain the value of the utility's rate base when setting just and reasonable rates. Our opinion pointed out the dangers of piecemeal rate hikes. There is no challenge in this case to our decision in Scates holding that the Corporation Commission's order was invalid.
In ordering the refund the Commission correctly viewed the higher rates as having been collected without lawful authority. This is the logical conclusion to be drawn from this Court's earlier opinion.[1] The refund order is also consistent with general principles of restitution requiring the return of property after a judicial determination that it was unlawfully acquired. United Gas Pipe Line Co. v. Mobile Gas Serv. Corp., 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373 (1956); Atlantic Coast Line Railroad Co. v. Florida, 295 U.S. 301, 55 S.Ct. 713, 79 L.Ed. 1451 (1935); Williams v. Washington Metropolitan Area Transit Commission, 134 U.S.App.D.C. 342, 415 F.2d 922 (D.C. Cir.1968), cert. denied, 393 U.S. 1081, 89 S.Ct. 860, 21 L.Ed.2d 773 (1969).
There is no blanket exemption from these principles where rate increases are concerned. For example, in United Gas Improvement Co. v. Callery Properties, Inc., 382 U.S. 223, 86 S.Ct. 360, 15 L.Ed.2d 284 (1965), the United States Supreme Court stated that the Federal Power Commission can make refunds where its orders have been overturned as a result of judicial review. Similarly, in Atlantic Coast Line Railroad Co. v. Florida, supra, Justice Cardozo enunciated the general principle that notions of equitable restitution require the return of monies collected under an invalidated rate order, unless such a return would be unjust in a particular case. There is support for the propriety of a refund following an invalidation of a rate order in *435 decisions of other jurisdictions considering similar questions. Bebchick v. Public Utilities Commission, 115 U.S.App.D.C. 216, 318 F.2d 187 (D.C. Cir.1963); Mountain States Telephone & Telegraph Co. v. Public Utilities Commission, 180 Colo. 74, 502 P.2d 945 (1972); Northwestern Bell Telephone Co. v. State, 299 Minn. 1, 216 N.W.2d 841 (1974).
Mountain States would have us follow decisions in Illinois, Mandel Brothers, Inc. v. Chicago Tunnel Terminal Co., 2 Ill.2d 205, 117 N.E.2d 774 (1954), and Ohio, Keco Industries v. Cincinnati & Suburban Bell Telephone Co., 166 Ohio St. 254, 141 N.E.2d 465, cert. denied, 355 U.S. 182, 78 S.Ct. 267, 2 L.Ed.2d 187 (1957), which appellant argues stand for the general principle that refunds should not be permitted in the rate field. Upon close examination, however, those cases do not so hold. Both Illinois and Ohio had statutes allowing an aggrieved party to post a bond staying the rate hike order pending judicial review.[2] The courts in those cases refused to allow refunds where no party had attempted to stay the higher rates as envisioned by statute. As stated in Keco:
Restitution, on the basis of unjust enrichment, is a common-law remedy designed to prevent one from retaining property to which he is not justly entitled.
... [T]he problem before us is whether that remedy is available in the present case, or whether such remedy, in relation to the present situation, has been abrogated either directly or indirectly by statute.
... [B]y providing a method whereby such rates may be suspended until final determination as to their reasonableness or lawfulness by the Supreme Court, [the General Assembly] has completely abrogated the common-law remedy of restitution in such cases. 141 N.E.2d at 467, 469.
Far from supporting Mountain States in this case, the Illinois and Ohio decisions undermine its position. In sharp contrast to the Illinois and Ohio statutory stay provisions, Arizona's statutes expressly prohibit any stay of a Commission order pending judicial review. A.R.S. § 40-254(F). Thus, unless the possibility of a refund exists, there is no effective remedy whatever for alleviating the effects of an invalid rate increase during the time that it takes the courts to reach a decision on review. If Arizona judicial decisions setting aside a rate increase were to be given prospective application in all cases, a determined Commission could theoretically perpetuate an unlawful rate indefinitely by approving anew the unlawful rate following each judicial determination. Such a result would fly in the face of our statutes providing for direct review of Commission orders by parties to the proceedings, and giving such cases priority over all but election matters. A.R.S. § 40-255. If there is no possibility of refund, each day spent in litigation would redound to the permanent financial benefit of the utility and give it every incentive for delay. In fact, the unavailability of either a stay mechanism or a refund suggests due process of law shortcomings. See, e.g., Oklahoma Natural Gas Co. v. Russell, 261 U.S. 290, 43 S.Ct. 353, 67 L.Ed. 659 (1923); Arizona Corporation Commission v. Mountain States Tel. & Tel. Co., 71 Ariz. 404, 228 P.2d 749 (1951).
We cannot accept appellant's contention that our Supreme Court's decisions have precluded the possibility of a refund. Appellant's argument is based on the Supreme Court's statement in Arizona Corporation Commission v. Superior Court, 107 Ariz. 24, 480 P.2d 988 (1971), that the setting of rates is a legislative function. Appellant argues that because a distinctly different line of cases holds that statutes enacted by the legislature are fully operative until declared invalid, the same must be true of Corporation Commission orders. The Supreme *436 Court in Corporation Commission v. Superior Court, supra, however, did not hold that a Corporation Commission order is a statute. It held merely that, because of the wide latitude of discretion vested in the Corporation Commission to fix rates, its proceedings were not reviewable by means of a special action in the nature of certiorari. The Court there fully recognized, however, that such orders are reviewable by other means if they are arbitrary, unsupported by the evidence or otherwise unlawful. The case had nothing to do with the possibility of a refund of unlawful rates.
Appellant's reliance on a line of cases precluding "retroactive rate making" by an administrative agency is also misplaced. When an agency approves a rate, and the rate becomes final, the agency may not later on its own initiative or as the result of collateral attack make a retroactive determination of a different rate and require reparations. Arizona Grocery Co. v. Atchison, T. & S.F. Railroad Co., 284 U.S. 370, 52 S.Ct. 183, 76 L.Ed. 348 (1932); El Paso & S.W.R. Co. v. Arizona Corporation Commission, 51 F.2d 573 (D.Ariz. 1931). The refund in this case, however, was precipitated by this Court's decision in Scates and not by the Corporation Commission's own determination of the impropriety of the 1975 rate increase. The refund is the result of the direct, statutorily authorized, review of the Commission's order. We therefore conclude that nothing in the procedural history of this case, Arizona's statutes or case law, or general principles of rate making precludes the Corporation Commission's refund order.
Having concluded that refund is available as a restitutionary remedy, we now must determine whether a refund would be unjust in this case. In considering that question we follow the general principle laid down by Justice Cardozo in Atlantic Coast Line, supra, that amounts collected under an invalid order should be refunded unless to do so would be unjust in the particular circumstances of the case. The Court in Atlantic Coast Line concluded that the peculiar facts of that case justified the railroad's keeping the money collected under the invalidated rate for reasons not present here. In Atlantic Coast Line, the deficiency in the original order was merely one of form. Certain findings were not made. In subsequent proceedings, however, upon new evidence the requisite findings were made and a proper order to the same effect as the first order was entered. Moreover, any error in the first order was on the side of rates which were too low, not too high. For these reasons, the Court declined to apply an artificial rule that the first order had been void from the beginning and instead considered whether upon equitable principles the money should or should not be returned.
The question in this case then is whether there are any circumstances which justify retention of the money by Mountain States despite the invalidity of the original rate order. We find none of the relevant circumstances in Atlantic Coast Line, supra, present here. At no time has there ever been any showing that the rates set by the Commission in its 1975 order were just and reasonable. The Constitution requires, as we held in Scates, that in order to determine whether rates are just and reasonable, the Commission must consider the value of all the utility's property, establish a fair rate of return and fix rates in light of that established rate. Neither in the original proceeding, nor in the hearing on remand, did Mountain States ever attempt to demonstrate the reasonableness of these rates in terms of the company's total rate base. As we pointed out in Scates, the most data that Mountain States originally offered were conclusory financial statements. At the refund hearing material of the same nature was again offered. This type of material was not sufficient to meet the constitutional prerequisites for the setting of fair and reasonable rates, either in 1975 or at the time of the refund hearing. Appellant's reluctance to part with such a large sum is understandable but does not, by itself, outweigh the interest of consumers *437 who have paid charges unlawfully established.
Affirmed.
OGG, C.J., Division 1, and JACOBSON, J., concur.
NOTES
[1] The applicable statute, A.R.S. § 40-254, regarding judicial review of Corporation Commission orders provides that the Court may enter judgment "affirming, modifying or setting aside" such orders. The Supreme Court has held in Sun City Water Co. v. Arizona Corporation Commission, 113 Ariz. 464, 556 P.2d 1126 (1976), that a reviewing court may not by way of remand to the Commission require the Commission to institute any particular further proceedings. This Court therefore did not specifically mandate refund proceedings by the Commission, but that fact is of no significance in determining the propriety of the Corporation Commission's actions in ordering the refund. That order is now properly before this Court on direct review.
[2] The possibility of a stay as an effective remedy may be more illusory than real when dealing with consumer's claims, because of the difficulties in posting a bond. See E. Levin, Illinois Public Utility Law and the Consumer: A Proposal to Redress the Imbalance, 26 De Paul L.Rev. 259, 268-69 (1977).