IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

---

RESIDENTIAL UTILITY CONSUMER OFFICE, AN AGENCY OF THE STATE OF
ARIZONA,
*Appellant.*

*v.*

THE ARIZONA CORPORATION COMMISSION,
*Appellee,*

ARIZONA WATER COMPANY,
*Intervenor.*

---

No. CV 15-0281-PR
Filed August 8, 2016

---

Arizona Corporation Commission
Nos. W-01445A-11-0310
W-01445A-12-0348
**AFFIRMED**

Opinion of the Court of Appeals, Division One
238 Ariz. 8, 355 P.3d 610 (App. 2015)
**VACATED**

---

COUNSEL:

Steven A. Hirsch (argued), Rodney W. Ott, Quarles & Brady, LLP, Phoenix,
Attorneys for Intervenor Arizona Water Company

Wesley C. Van Cleve (argued), Janet Wagner, Maureen A. Scott, Arizona
Corporation Commission, Phoenix, Attorneys for Arizona Corporation
Commission

Scott S. Wakefield, Hienton & Curry, P.L.L.C., Phoenix; and Daniel
Pozefsky (argued), Residential Utility Consumer Office, Phoenix, Attorneys
for Residential Utility Consumer Office

Christina Estes-Werther, General Counsel, League of Arizona Cities and
Towns, Phoenix, Attorney for Amicus Curiae the League of Arizona Cities
and Towns

John J. Egbert, Kenneth C. Sundlof, Jr., Jennings, Strouss & Salmon, P.L.C., Attorneys for Amicus Curiae Southwest Gas Corporation

Thomas A. Loquvam, Arizona Public Service Company, Phoenix; and Matthew E. Price, William K. Dreher, Jenner & Block LLP, Washington, D.C., Attorneys for Amicus Curiae Arizona Public Service Company

Thomas H. Campbell, Michael T. Hallam, Lewis Roca Rothgerber Christie LLP, Phoenix, Attorneys for Amicus Curiae EPCOR Arizona, et al.

Timothy M. Hogan, Joy Herr-Cardillo, Arizona Center for Law in the Public Interest, Phoenix, Attorneys for Amicus Curiae Arizona Center for Law in the Public Interest

Michael W. Patten, Timothy J. Sabo, Snell & Wilmer L.L.P., Phoenix; and Bradley S. Carroll, Tucson Electric Power Company, Tucson, Attorneys for Amicus Curiae Tucson Electric Power Company, et al.

Court S. Rich, Loren R. Ungar, Evan Bolick, Rose Law Group, PC, Scottsdale, Attorneys for Amicus Curiae Energy Freedom Coalition of America

Timothy Berg, Theresa Dwyer-Federhar, Fennemore Craig, P.C., Phoenix, Attorneys for Amicus Curiae Water Utilities Association of Arizona

Meghan H. Grabel, Osborn Maledon, Phoenix, Attorneys for Amicus Curiae Arizona Investment Council

Jennifer A. Cranston, Gallagher & Kennedy, P.A., Phoenix, Attorneys for Amicus Curiae Grand Canyon State Electric Cooperative Association Inc.

Timothy J. Sabo, Snell & Wilmer L.L.P., Phoenix, Attorney for Amicus Curiae Global Water Resources, Inc.

Julie Nepveu, AARP Foundation Litigation, Washington, DC; and Veronika Fabian, Choi & Fabian, PLC, Chandler, Attorneys for Amicus Curiae AARP

———————

JUSTICE BRUTINEL authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, JUSTICE TIMMER, and JUDGE STARING* joined.

_____

JUSTICE BRUTINEL, opinion of the Court:

¶1        The Arizona Corporation Commission ("Commission") determines the rates that a public service corporation (a "utility") may charge. The Arizona Constitution requires the Commission to determine the fair value of a utility's in-state property when setting rates, which historically has occurred in a full rate case. During a full rate case, the Commission scrutinizes a utility's financial picture and holds many hearings—often extending more than a year. Here the Commission approved a rate increase mechanism known as the system improvements benefit ("SIB"), allowing it to adjust rates between full rate cases to help a utility recoup the cost of newly-completed infrastructure projects. We hold that the SIB mechanism complies with the Arizona Constitution's mandate that the Commission determine the fair value of a utility's property when setting rates.

## I.        BACKGROUND

### A.  Procedural history

¶2        Arizona Water Company ("AWC") is a private, for-profit monopoly utility company that provides water service to several towns and rural communities. AWC is currently undertaking extensive capital improvements to its aging pipeline infrastructure. In 2011, AWC filed a rate case with the Commission for its eastern group water systems ("Eastern Group Case"). The next year AWC filed a similar rate case for its northern group water systems ("Northern Group Case"). In both cases AWC sought a rate increase and proposed a step-increase mechanism that would allow the Commission to adjust rates between full rate cases. AWC argued that recouping the costs of its infrastructure improvements through the traditional mechanism would require a near-continuous series of lengthy

_____

* Justice Clint Bolick recused himself from this case. Pursuant to article 6, section 3, of the Arizona Constitution, the Honorable Christopher Staring, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

rate cases, raising costs and exposing consumers to "rate shock" from sudden, dramatic rate increases.

¶3   Attempting to settle the rate cases, AWC proposed the SIB mechanism, which allows AWC to petition for a rate increase between rate cases as new AWC infrastructure projects become active. *See infra* ¶¶ 7–9. Despite opposition from the Residential Utility Consumer Organization ("RUCO"), the Commission approved, with some modifications, the SIB mechanism.

¶4   RUCO appealed. The court of appeals consolidated the Eastern Group and Northern Group cases and vacated the Commission's approval of the SIB mechanism. *Residential Util. Consumer Office v. Ariz. Corp. Comm'n*, 238 Ariz. 8, 9–10 ¶ 1, 355 P.3d 610, 611–12 (App. 2015). Concerned the Commission would not consider all elements of a general rate case proceeding when analyzing an SIB surcharge petition, the court concluded that the SIB (1) did not fall within previously recognized exceptions to the fair value requirement, and (2) did not "provide[] the functional equivalent of a fair value determination." *Id.* at 17–18 ¶¶ 47, 50, 355 P.3d at 619–20. As a result, the court held that "the SIB mechanism does not comply with the Arizona Constitution's mandate that the Commission determine a public service corporation's fair value when setting rates[.]" *Id.* at 10 ¶ 1, 355 P.3d at 612.

¶5   We granted review because the scope of the Corporation Commission's constitutional authority to adopt new ratemaking mechanisms is an issue of statewide importance. We have jurisdiction under article 6, section 5(3), of the Arizona Constitution and A.R.S. § 12-120.24.

### B. Ratemaking: full rate cases and the SIB mechanism

¶6   The Commission is constitutionally charged with setting "just and reasonable rates." Ariz. Const. art. 15, § 3. The Commission sets rates by finding the "fair value" of a utility's in-state property, Ariz. Const. art. 15, § 14, and then using that value as the "rate base" in the following rate-of-return formula: (Rate Base x Rate of Return) + Expenses = Revenue Requirement. *US West Commc'ns, Inc. v. Ariz. Corp. Comm'n*, 201 Ariz. 242, 245 ¶ 13, 34 P.3d 351, 354 (2001). The Commission determines rates using a proceeding called a "rate case," now codified as Arizona Administrative

Code (A.A.C.) R14-2-103 ("Rule 103"). Rule 103 or "full" rate case proceedings are complex. They typically attract many intervenors, require voluminous and detailed filings, and involve multiple, lengthy hearings. A Rule 103 rate case for a utility like AWC often takes more than a year to process.

¶7        The SIB mechanism allows the Commission to adjust rates in between rate cases, subject to various requirements and conditions. Under the SIB framework, AWC must file a full rate case at least once every five years. Within the rate case, the Commission must evaluate and pre-approve all SIB-eligible infrastructure replacement projects. During the interim years, AWC may file for only one SIB surcharge per year. Before a project may be incorporated in the SIB surcharge calculation, it must be completed and actively serving customers.

¶8        When AWC requests an SIB surcharge, it must submit current financial documents, including a balance sheet reflecting the value of its property—both older infrastructure and newly-constructed SIB projects that are in use. The tax multiplier, depreciation rate, and authorized rate of return used in calculating the SIB must be the same as those approved by the Commission in the most recent rate case. Before a surcharge may take effect, the Commission must provide 30-days public notice and receive and consider objections.

¶9        Every year the Commission must conduct a "true-up" calculation to reconcile revenue collected through the SIB surcharge with revenue authorized for the previous period. Any over-collection is re-funded to customers. To compensate for efficiency-based savings resulting from the improved infrastructure, AWC must issue a credit to customers in the form of a refund equal to five percent of the SIB surcharge. Both the SIB surcharge and efficiency credit must be clearly displayed on customers' bills.

## II.    DISCUSSION

### A. Standard of review

¶10        Whether the SIB mechanism complies with the Arizona Constitution is a question of law we review de novo. *See US West*, 201 Ariz. at 244 ¶ 7, 34 P.3d at 353. We generally presume the Commission's actions

are constitutional, and we uphold them unless they are arbitrary or an abuse of discretion. *Ariz. Corp. Comm'n v. Ariz. Pub. Serv. Co.*, 113 Ariz. 368, 371, 555 P.2d 326, 329 (1976); *Simms v. Round Valley Light & Power Co.*, 80 Ariz. 145, 154, 294 P.2d 378, 384 (1956).

## B. The Arizona Constitution grants the Commission broad discretion within its unique decision-making sphere

**¶11**       "The Arizona Corporation Commission, unlike such bodies in most states, is not a creature of the legislature, but is a constitutional body which owes its existence to provisions in the organic law of this state." *Ethington v. Wright*, 66 Ariz. 382, 389, 189 P.2d 209, 214 (1948); *see* Ariz. Const. art. 15 ("The Corporation Commission"), §§ 1–19. As relevant here, the powers and duties of the Commission are described in article 15, § 3:

> The corporation commission shall have full power to, and shall, prescribe just and reasonable classifications to be used and just and reasonable rates and charges to be made and collected, by public service corporations within the state for service rendered therein, and make reasonable rules, regulations, and orders, by which such corporations shall be governed in the transaction of business within the state[.]

Regarding the Commission performing these duties, article 15, § 14, provides:

> The corporation commission shall, to aid it in the proper discharge of its duties, ascertain the fair value of the property within the state of every public service corporation doing business therein; and every public service corporation doing business within the state shall furnish to the commission all evidence in its possession, and all assistance in its power, requested by the commission in aid of the determination of the value of the property within the State of such public service corporation.

**¶12**       The Commission has full and exclusive power to set "just and reasonable rates" for public service utilities. *See* Ariz. Const. art. 15, § 3; *see also State v. Tucson Gas, Electric Light & Power Co.*, 15 Ariz. 294, 306, 138 P. 781, 786 (1914). As we have previously observed:

> [I]n the matter of prescribing classifications, rates, and charges of public service corporations and in making rules, regulations, and orders concerning such classifications, rates, and charges by which public service corporations are to be governed, the Corporation Commission has full and exclusive power. In such field the Commission is supreme and such exclusive field may not be invaded by the courts, the legislature, or the executive.

*Ethington*, 66 Ariz. at 392, 189 P.2d at 216; *see also Tucson Gas*, 15 Ariz. at 301–03, 138 P. at 784–85 (holding that because article 14, § 6, of the Arizona Constitution authorizes the state legislature to enlarge the powers and extend the duties of the Commission, the Constitution impliedly prohibits the legislature from exercising powers assigned to the Commission); *Ariz. Pub. Serv. Co.*, 113 Ariz. at 371, 555 P.2d at 329 ("We would not presume to instruct the Commission as to how it should exercise its legislative functions.").

### C. The Commission must use current fair value as the basis for setting rates for monopoly, for-profit utilities

**¶13**       The Commission generally must use its determination of fair value as the basis for calculating a reasonable return on a utility's investment and, in turn, a proper rate. *Ariz. Corp. Comm'n v. Ariz. Water Co.*, 85 Ariz. 198, 202, 335 P.2d 412, 414 (1959); *see supra* ¶ 6. Although this "traditional approach" is not constitutionally required in all cases, *see US West*, 201 Ariz. at 246 ¶ 19, 34 P.3d at 355 (considering ratemaking for a utility in a competitive industry and finding that "[i]n such a climate, there is no reason to rigidly link the fair value determination to the establishment of rates"), we have repeatedly required its use in ratemaking for private, for-profit monopolies like AWC. *Simms*, 80 Ariz. at 151, 294 P.2d at 382; *see also US West*, 201 Ariz. at 246 ¶ 19, 34 P.3d at 355 ("We still believe that when a monopoly exists, the rate-of-return method is proper."). Similarly, we have held that, with some limited exceptions, fair value must be determined when rates are set. *Ariz. Water Co.,* 85 Ariz. at 201–02, 335 P.2d at 414–15; *Simms,* 80 Ariz. at 151, 294 P.2d at 382. As a result, in order to fix just and reasonable rates for AWC and other for-profit monopoly utilities, the Commission is obligated to base rates on the current fair value of the utility's property.

### D. The fair value requirement applies only to the "rate base" variable of the traditional ratemaking formula

**¶14** Under Arizona's Constitution, the "fair value" requirement applies only to the "rate base" element of the traditional ratemaking equation. *US West*, 201 Ariz. at 245 ¶ 13, 34 P.3d at 354; *see supra* ¶ 6. The rate base element involves a calculation of, in the Constitution's language, "the fair value of the [utility's] property within the state." Ariz. Const. art. 15, § 14. On the other hand, the rate of return, expenses, and revenue requirement elements do not measure the value of the utility's assets. In *Arizona Public Service Company*, we explained, "Under the constitution as interpreted by this court, the Commission is required to find the fair value of the company's property and use such finding *as a rate base* for the purpose of determining what are just and reasonable rates." 113 Ariz. at 370, 555 P.2d at 328 (citing *Simms*, 80 Ariz. 145, 294 P.2d 378) (emphasis added); *see also Scates v. Ariz. Corp. Comm'n*, 118 Ariz. 531, 534, 578 P.2d 612, 615 (App. 1978) ("[T]he Commission must first determine the 'fair value' of a utility's property and use this value as the utility's rate base."). Accordingly, we reject RUCO's argument that "fair value" somehow encompasses the determination of the appropriate rate of return.

### E. The SIB contains a reasonable method for determining AWC's fair value rate base

**¶15** The Commission is required to ascertain the fair value of the company's property and use that value as a rate base for calculating just and reasonable rates. *Simms*, 80 Ariz. at 151, 294 P.2d at 382. But the "constitution does not establish a formula for arriving at fair value" and we have never prescribed one. *Id.*; *Ariz. Water Co.*, 85 Ariz. at 202, 335 P.2d at 414. The method for determining fair value, then, falls within the Commission's discretion, and we will uphold a fair value determination unless it "is arbitrary and unfair at the time it is made." *Ariz. Pub. Serv. Co.*, 113 Ariz. at 371, 555 P.2d at 329. A full rate case is one permissible method for determining fair value. Such a proceeding, however, is a product of the Commission's own rules and practice, *see* Rule 103. It is not constitutionally mandated.

**¶16** As the Commission explained in its decision, the SIB mechanism is based on the fair value rate base of AWC's property. The mechanism uses the fair value determination made in the previous rate case

and adds the value of the infrastructure improvements once they are made. AWC must submit up-to-date financial statements with each SIB surcharge application, including an adjusted rate base schedule in which the value of operational SIB projects is added to the underlying rate base from the previous rate case. Using these financial statements, the Commission will also update the fair value rate base and other elements of the formula from the most recent rate case to "recognize changes in plant, accumulated depreciation, contributions in aid of construction, advances in aid of construction, and accumulated deferred income taxes . . . ." Ariz. Corp. Comm'n, Decision No. 73938 at 51, W-01445A-11-0310, 2013 WL 5408684 (June 27, 2013). Although the Commission will not re-calculate anew every input into the fair value determination, this updated measurement satisfies the constitutional requirement that the Commission "ascertain the fair value" of a public utility's property "to aid it in the proper discharge of its duties." Ariz. Const. art. 15, § 14.

¶17          In finding that the Commission abused its discretion, the court of appeals took a restrictive view of the requirement that the Commission "ascertain the fair value" of a public utility "to aid" it in setting rates. The court seemed to equate the full rate case procedure with the constitutional requirement that the Commission determine the fair value of a utility's property, frequently using the terms "rate case" and "fair value determination" interchangeably. *See*, *e.g.*, *Residential Util. Consumer Office*, 238 Ariz. 8, 13 ¶ 27, 14 ¶ 33, 16 ¶ 40, 17 ¶¶ 45, 47, 18 ¶ 49, 355 P.3d 610, 615–620. Because the fair value mechanism calculation within the SIB does not require all the filings that would form part of a rate case, the court of appeals concluded that the SIB was "inconsistent with the mandate that the Commission perform a fair value determination 'at the time of inquiry.'" *Id.* at 17 ¶ 42, 355 P.3d at 619 (quoting *Ariz. Corp. Comm'n*, 85 Ariz. at 201–02, 335 P.2d at 414–15).

¶18          In ruling that the SIB fails to properly assess current fair value when setting rates, the court of appeals analyzed whether the SIB mechanism could be upheld as an interim rate or an adjustor mechanism—two ratemaking mechanisms that, under narrow circumstances set forth in court of appeals cases, permit the Commission to approve rates without making a current finding of fair value. *See Residential Util. Consumer Office*, 238 Ariz. at 12 ¶ 21, 355 P.3d at 614; *Residential Util. Consumer Office v. Ariz. Corp. Comm'n*, 199 Ariz. 588, 591 ¶ 11, 20 P.3d 1169, 1172 (App. 2001); *Scates*, 118 Ariz. at 535, 578 P.2d at 616; *see also Ariz. Corp. Comm'n v. Mountain*

*States Tel. & Tel. Co.*, 71 Ariz. 404, 412–13, 228 P.2d 749, 754–55 (1951). The court found that the SIB resembled neither pre-approved mechanism. We agree that the SIB is neither an interim rate nor an adjustor mechanism, but we disagree that this ends the inquiry. As we explained above, SIB rate adjustments will be based on a current finding of the fair value of AWC's property. By supplementing and updating the fair value determination from a previous rate case, the SIB satisfies the constitutional mandate that the Commission determine fair value to aid it in setting rates.

**¶19**        In reaching its conclusion, the court of appeals relied heavily on its opinion in *Scates*. That case, however, is inapposite. In *Scates*, the court found that the Commission abused its discretion by imposing a rate increase without considering *any* measure of fair value. 118 Ariz. at 534, 578 P.2d at 615. Such an increase, the court held, could not be justified as an adjustor mechanism or interim rate. *Id.* at 535–36, 578 P.2d at 616–17. The *Scates* court, however, did not assert that fair value can only be ascertained through a full rate case; instead, it explicitly did not foreclose the possibility that the Commission could satisfy the requirement by referring to "previous submissions with some updating" or to "summary financial information." *Id.* at 537, 578 P.2d at 618. The SIB mechanism—grounded in a current determination of fair value—comports with *Scates*, the Arizona Constitution, and this Court's cases.

## III.    CONCLUSION

**¶20**        As required by the Arizona Constitution, under the SIB mechanism, the Corporation Commission will "ascertain the fair value" of AWC's property and use that determination "to aid" it in setting SIB surcharge rates. As a result, we vacate the court of appeals' opinion and affirm the Commission's orders approving the SIB mechanism.